Fyke FARMER

v.

J. M. ROUNTREE, Director, et al.

Walter E. STYLES

v.

UNITED STATES of America.

UNITED STATES of America

v.

Fyke FARMER et al.

Civ. A. Nos. 1685, 1934, 2203.

United States District Court
M. D. Tennessee, Nashville Division.
Oct. 17, 1956.

Fyke Farmer, Nashville, Tenn., for plaintiff.

Fred Elledge, Jr., U. S. Dist. Atty., Nashville, Tenn., for defendants in Nos. 1685 and 1934.

Fred Elledge, Jr., U. S. Dist. Atty., Nashville, Tenn., for plaintiff.

Fyke Farmer, Nashville, Tenn., for defendants in No. 2203.

WILLIAM E. MILLER, District Judge.

These actions involve the income tax liability of the taxpayers, Fyke Farmer and Walter E. Styles, for the year 1949.

In Civil Action No. 1685, Farmer sues under the Declaratory Judgments Law, 28 U.S.C.A. §§ 2201, 2202, for a judgment declaring his immunity in substantial part from income tax liability for the year 1949 and to enjoin collection of the tax assessed against him. In Civil Action No. 2203, the United States sues Farmer to recover his assessed income taxes for the year 1949. In Civil Action No. 1934, Styles, having paid his 1949 income taxes, sues for a refund.

In each action the Government has filed a motion for judgment on the pleadings, taking the position that the pleadings show, as a matter of law, that the Court is without jurisdiction to entertain or adjudicate the claims of the taxpayers and that such claims in any event are legally groundless.

The taxpayers insist that they should be permitted to take proof and that the actions cannot properly be disposed of upon the pleadings alone. They propose to conduct an inquiry into the military and international affairs of the Federal Government since the cessation of hostilities in World War II, and to examine countless witnesses, including former President Truman and a host of other high ranking civil and military officers. They also propose to obtain evidence from the Government by submitting over 1,300 requests for admission of facts. It is estimated that a minimum of six weeks time would be required for a trial on the facts.

The stated purpose of the proposed proof is to show that the military and foreign policies of the United States since World War II, including the prosecution of the Korean War, were designed and carried out not for the purpose of defense or the protection of the proper interests of the United States, but for the purpose of aggrandizement and to impose military domination by the United States throughout the world. It is argued that such alleged activities on the part of the Federal Government are in violation of international law and are therefore illegal and void. Once these alleged facts are established, so the taxpayers argue, they have the right as individuals under principles of international law to refuse payment of two-thirds of their income taxes for the reason that the federal revenue in that proportion has been illegally appropriated by Congress to the preparation for and waging of aggressive war, and the remaining one-third to the legal and constitutional functions of government. They contend, in short, that international law overrides the internal laws of the United States and extends to them as individual citizens not only the right but the duty to refuse to participate in the so-called aggressive military activities of the country, and hence the right to refuse payment of taxes appropriated for those purposes. Otherwise, it is argued that they would be guilty as war criminals under international law and punishable as such.

But giving the taxpayers the benefit of all factual allegations of their pleadings, whether admitted or denied by the Government, it is apparent that their claims cannot be legally supported and that no amount of proof could give them validity. Under such circumstances, to permit the proposed inquiry to be made would be an abuse of the processes of the Court, as well as a waste of judicial time seriously

needed in the trial and consideration of other cases.

■ Courts are constituted to adjudicate cases and controversies properly coming within the judicial sphere of action. They have no right or authority to resolve political or governmental questions, or to review issues of governmental policy entrusted to the executive and legislative departments.

■ Under the Constitution of the United States, Congress is vested with the exclusive right to levy taxes and to appropriate public revenue for the common defense and general welfare of the country, Const. Art. 1, Sec. 8, Cl. 1, and to provide for and maintain an army and a navy, Const. Art. 1, Sec. 8, Cls. 12 and 13. It has, as it must necessarily have, the authority exclusive of any court, to determine the requirements of national defense and the amount of tax revenue to be used for defensive or military purposes.

■ The foreign policy of the United States is the exclusive province of the executive and the legislative branches of government, and in this area of responsibility, as well as in all questions of national defense, it is imperative that courts strictly observe the limitations upon their power and refrain from rendering any judgment which would embarrass the policy decisions of government or involve them in confusion and uncertainty.

■ With these principles in mind, it is apparent that the Court is without jurisdiction of the claims here asserted. To grant taxpayers the relief they seek, the Court would be required to substitute its judgment for that of the other two branches of the Government by declaring that the foreign and military policies of the nation were in reality for illegal and aggressive war and not for the legitimate purpose of national security or for the preservation of the essential interests of the United States. The judiciary not only does not have the proper criteria or the technical competence to make such determinations, but it is without the means of obtaining the varied and complex facts which would be required to draw a conclusion. Even if it could develop criteria and obtain the facts, it is altogether clear that the courts must refrain from intruding or intermeddling in realms so manifestly political and nonjudicial. If the judiciary should assume the power contended for, thus in effect reversing and condemning the considered judgment of the President and the Congress, the foreign and military policies of the Federal Government could have no real finality until approved by the courts at the conclusion of interminable private litigation. The chaotic and disruptive effects of such judicial censorship are so obvious that comment upon them is unnecessary.

No taxpayer or citizen has the right to have the judiciary conduct an inquiry into the military and foreign policies of the United States, or to review or reexamine the appropriations made by Congress for military and defense purposes. The courts have no more authority to sit in judgment upon such discretionary acts and decisions of the executive and legislative departments, after the event, than they would have to restrain them or advise them what to do in the first instance.

There are many examples where the courts have refused to intervene because due regard for the effective working of our government revealed the issue to be one of a purely political nature and, therefore, not proper for judicial determination.

Violation of the guarantee of a republican form of government to the states cannot be challenged in the courts. Pacific States Tel. & Tel. Co. v. State of Oregon, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377. The duty to see to it that the laws are faithfully executed cannot be brought under legal compulsion. State of Mississippi v. Johnson, 4 Wall. 475, 18 L.Ed. 437. Questions affecting the boundaries of nations are political questions and the courts must respect the pronounced will of the legislature. Foster v. Neilson, 2 Pet. 253, 309, 7 L.Ed. 415. The same is true with respect to the

recognition or non-recognition of foreign governments, Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; the duration of a state of war, The Protector, 12 Wall. 700, 20 L.Ed. 463; and the abrogation of treaties, The Chinese Exclusion Case (Chae Chan Ping v. U. S.) 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068. Similar cases of judicial restraint with respect to purely political questions could be multiplied indefinitely. But none can be found more strikingly illustrating the necessity for noninterference by the courts than the present actions.

■ Another reason that the Court lacks jurisdiction to adjudicate the claims in question is that the Supreme Court of the United States has established and adhered to the doctrine that an individual taxpayer has no right to challenge a federal appropriation act on the ground that it is invalid and will result in taxation for illegal purposes. Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. In such cases the rights of the individual are not affected in such manner as to give rise to a judicial controversy.

■■ Aside from the Court's lack of jurisdiction to adjudicate facts essential to the taxpayers' case, there are still other fatal objections to the claims. In the first place, the Court does not agree that there exists a principle of international law operating to relieve citizens from their tax obligations and liabilities under the local laws of their country, or imposing upon them individual responsibility for the use made of tax revenue. No precedent for such a view has been cited and it finds no support in the language or purpose of any international engagement to which this country is a party. The Nuremberg Judgment was based upon altogether different facts and does not support the theories of immunity here advanced.

Secondly, if the principle could be discovered, it could not be enforced so as to interfere with or impair the exclusive and non-delegable powers of the executive and legislative departments with respect to the foreign and military policies of the nation. The treaty-making power "[does not] extend so far as to authorize what the constitution forbids". De Geofroy v. Riggs, 133 U.S. 258, 10 S.Ct. 295, 297, 33 L.Ed. 642, 645; Asakura v. City of Seattle, 265 U.S. 332, 44 S.Ct. 515, 68 L.Ed. 1041, 1044.

Many other reasons suggest themselves why the claims cannot prevail, but the reasons indicated are fundamental and are dispositive of all of the issues.

■ The argument that Judge Davies' prior orders overruling the motion to dismiss in Civil Action No. 1685 have become the law of the case is not well taken. It is apparent from the order of April 7, 1954 that Judge Davies had serious doubts about jurisdiction and that he in effect reserved a ruling upon that question, as well as upon all other questions, until the case was more fully developed by the plaintiff. His subsequent order of August 5, 1955, overruling a motion to dismiss the complaint as amended, did not specifically rule that the Court had jurisdiction or that the complaint stated a valid claim for relief. That order is to be construed in the same way as the first order, i. e., that the motion to dismiss was overruled merely to allow the taxpayer the opportunity to further develop his case.

However, at a recent pre-trial conference, called for the purpose of defining the issues, the question of jurisdiction was renewed by the Government and the importance of a decision upon the question at this time was made clearly to appear by the taxpayers' proposal to take the extensive and practically unlimited proof already alluded to. In this posture, the Court directed the entry of an order permitting the taxpayers to further amend their pleadings so as to state their case in its strongest light and if possible to develop a genuine and material issue of fact. Pursuant to the order the taxpayers have filed further extensive pleadings and it may reasonably be supposed that their case is now before the Court in its most favorable light. That being

true, the Court is of the opinion that the jurisdictional question, which was not decided by Judge Davies, should now be passed upon, and the actions finally disposed of.

The motion of the Government in the three actions for judgment on the pleadings will be sustained and an appropriate form of judgment will be submitted in each case.