ABRAHAM J. MUSTE AND ESTATE OF ANNA MUSTE, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66835. Filed March 13, 1961.

*Harrop A. Freeman, Esq.*, for the petitioners.
*Victor H. Frank, Jr., Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax and additions thereto under the Internal Revenue Code of 1939 for the years and in the amounts as follows:

| Year | Income tax | Additions to tax | | | |
| --- | --- | --- | --- | --- | --- |
| | | Sec. 293(b) | Sec. 291(a) | Sec. 294 (d)(1)(A) | Sec. 294 (d)(2) |
| 1948 | $357 | $178.50 | $89.25 | $35.70 | $21.42 |
| 1949 | 283 | 141.50 | 70.75 | 28.30 | 16.98 |
| 1950 | 176 | 88.00 | 44.00 | 17.60 | 10.56 |
| 1951 | 197 | 98.50 | 49.25 | 19.70 | 11.82 |
| 1952 | 152 | 76.00 | 38.00 | 15.20 | 9.12 |

In the petition it is alleged that because of the petitioner's religious beliefs "the assertion of taxes and penalties herein [is] in violation of the Constitution of the United States and the Amendments thereto,

and the laws of the United States." At the hearing the respondent conceded error in determining additions to tax under section 294 (d) (2).

FINDINGS OF FACT.

Some of the facts are stipulated and are incorporated herein by this reference. The petitioner Abraham J. Muste will hereinafter be referred to as the petitioner.

During the years 1948 through 1952 the petitioner was married and resided in New York, New York. Neither he nor his wife filed Federal income tax returns for those years and neither paid any income taxes to the United States Government.

The petitioner is an ordained Presbyterian minister and is also a member of the Society of Friends (Quakers). He is a graduate of Hope College in Holland, Michigan, where he received a bachelor of arts degree. He also received a master of arts degree from the New Brunswick Theological Seminary and a bachelor of divinity degree from the Union Theological Seminary in New York City.

The petitioner is a pacifist. Since 1916 he has been a member, and frequently an officer, in the Fellowship of Reconciliation, which is an organization located in New York City, which is opposed to the participation in, or preparation for, war. In 1940 he became its national executive secretary and held this position until 1953 when he reached the age of retirement and became secretary emeritus.

During the years 1948 through 1952 the petitioner received from the Fellowship of Reconciliation the following amounts as compensation for services:

| | |
|---|---|
| 1948 | $3,720.00 |
| 1949 | 3,204.44 |
| 1950 | 3,115.00 |
| 1951 | 3,092.88 |
| 1952 | 3,411.60 |

The Fellowship of Reconciliation did not deduct and withhold any Federal income taxes from the above compensation during the years 1948 through 1952. This was in accord with the petitioner's request made to the organization based on the ground that the remuneration of an ordained minister is not subject to withholding.

The petitioner has written articles on the policy of the United States concerning thermonuclear warfare which have appeared in pacifist publications such as The Fellowship, which is published by the Fellowship of Reconciliation, a magazine known as Peacemakers, and bulletins of an organization known as the "War Resitors League." It was the petitioner's opinion, after examining the Federal budget and obtaining advice of others, that during the years 1948 through 1952 approximately 60 percent of the Federal budget was to be used for war purposes or for preparation for war.

Prior to 1948 the petitioner had filed income tax returns regularly, although he had qualms of conscience because he felt that he was contributing to war purposes. In 1948 he reached the conclusion that since the Federal Government had decided to produce hydrogen bombs and other weapons, it would be irrational for him, and against his conscience, to pay money to the Government for the production and use of such weapons. He accordingly at that time reached the decision to refuse to file income tax returns and pay any income tax.

Prior to the date for filing Federal income tax returns for each of the taxable years 1948 through 1952, the petitioner wrote letters with accompanying statements to the Internal Revenue Service stating that he did not intend to file income tax returns and pay income taxes, and stating his reasons therefor. Typical of the letters is one dated March 1, 1951, which he sent concerning the taxable year 1950 in which he stated in part as follows:

For the third successive year I must refuse to file an income tax return or to pay the Federal income tax. In lieu of the official report which I am unable and unwilling to file it seems appropriate that I should make a personal statement, to you, a fellow-citizen who also has responsibilities to face in this matter.

I am impelled to take the course which I am following by my Christian convictions, by conscience, and by my love for my country.

\*    \*    \*    \*    \*    \*    \*

I would \* \* \* have to reject war as a means even if the end seemed saner and worthier than that with which the world is today confronted. I am unable to regard participation in war—least of all in its utterly indiscriminate and unrestrained modern form—as compatible with the teaching and spirit of Christ to whom and whose church I owe an allegiance prior to my allegiance to any early [sic] state. Taking any voluntary part in war violates my conscience as a man, to whom all persons on both sides of the battle lines are equally sacred.

\*    \*    \*    \*    \*    \*    \*

The budget and the energies and policies of the Federal government are today being rapidly sucked into a total commitment to war preparation. I fear that as the drive toward war gathers momentum, less and less weight attaches to the verval [sic] or other protests of those who nevertheless submit to conscription of their person or substance. I consider, therefore, that I am obligated to withdraw as completely as possible from association with the war-making aspect of the State, to make as nearly total a protest as possible. \* \* \*

A pacifist could not consistently make atomic bombs for others to use. About two years ago, I became convinced that I could no longer recognize the right of this or any other government to tax me in order to obtain the money to produce atomic or other weapons. In partial discharge of the obligation which accordingly rests upon me as a Christian, a member of the human family and a loyal citizen, I decline to file a Federal income tax return or to pay the tax.

\*    \*    \*    \*    \*    \*    \*

\* \* \* While I am in conscience bound to withhold cooperation from the process of raising funds for war, it would be a privilege to me to talk with you and others on a personal basis and to strive to explain why I on my part also "have no choice."

In a statement which petitioner submitted to the Internal Revenue Service with respect to his refusal to pay taxes for the year 1948, he stated in part as follows:

The two decisive powers of government, especially with respect to war, are the power to conscript and the power to tax.

Pacifists recognize that to be consistent they must refuse to be conscripted for military service or training. I have come as the result of long reflection and prayer to the conviction that I at least am in conscience bound, in the present period, under the conditions above set forth, to challenge the right of the government to tax me for waging war, * * *.

I recognize that as a citizen it is my duty to strive by "democratic" means to change laws and policies with which I disagree and that ordinarily, where no serious issue of conscience is involved, one obeys laws until they are changed. The fact that a conscription law has been enacted does not, however, lead the pacifist to the conclusion that he must conform to it until it is repealed.

A consistent pacifist would unquestionably also be opposed in principle to paying taxes which went directly and solely to war purposes. The same reasoning that would prevent him from firing a gun at an enemy and would prevent him from thinking that he was exonerated from guilt if he handed the gun and ammunition to another soldier to use, would also keep him from paying the money to make the guns and ammunition.

The petitioner knew that the Federal statutes required him to file Federal income tax returns and pay income taxes for the years 1948 through 1952. He did not know whether this requirement of the law was constitutional, but he thought it might be possible that the Constitution would support him in his refusal on the basis of religious convictions. At the time he made his decision to refuse to file returns and pay taxes, he did not consult with a constitutional lawyer or any tax expert, although the question was discussed among many people, including attorneys. He was not sure as to what the courts might declare with respect to the constitutional question, but nevertheless decided to refuse to pay the taxes.

At some time prior to June 1951 agents of the Internal Revenue Service made an investigation of all the books and records of the Fellowship of Reconciliation which were readily made available by that organization. From these records and canceled checks the agents determined the amounts of compensation paid to petitioner. In June 1951 petitioner was interviewed at an office of the Internal Revenue Service in New York City by two of its representatives concerning his failure to file returns and pay taxes for the years 1948, 1949, and 1950. At that time his salary and communications with the Internal Revenue Service were discussed. Petitioner agreed to sign a copy of the transcript of the interview, but it was never presented to him. Upon request of a representative of the Internal Revenue Service the petitioner in 1956 signed consents to an extension of the time for assessment and collection of the taxes.

The deficiencies in tax determined by the respondent, as set forth hereinabove, resulted entirely from the inclusion by the respondent in the petitioner's income of the amounts set forth above representing salary received by him from the Fellowship of Reconciliation. In arriving at the tax the respondent allowed the petitioner the standard deduction. In the notice of deficiency the respondent also determined additions to tax for each of the years 1948 through 1952 under section 291(a) of the Internal Revenue Code of 1939 for failure to file income tax returns, under section 293(b) on account of fraud, under section 294(d)(1)(A) for failure to file declarations of estimated tax, and under section 294(d)(2) for substantial underestimation of estimated tax.

The failure of the petitioner to file Federal income tax returns and declarations of estimated tax for each of the years 1948 through 1952 was not due to reasonable cause, but was due to willful neglect. No part of the deficiency for any of the years 1948 to 1952, inclusive, is due to fraud with intent to evade tax.

OPINION.

The petitioner concedes that the respondent correctly computed the deficiencies in tax under the statute. However, he contends that the Constitution, which assures him religious freedom, gives him immunity from paying taxes which are to be used in part for war or preparation for war; that even if the United States may legally collect the tax, the Constitution at least protects him against a requirement that he do any affirmative acts in violation of his religious belief, namely, file returns and pay the tax; and that in any event, his failure, because of sincere religious beliefs, to file returns and declarations of estimated tax and pay taxes, cannot be the basis for imposing additions to tax on account of fraud or failure to file. On brief he specifically relies upon the first amendment to the Constitution, which in material part provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * *."

Section 11 of the Internal Revenue Code of 1939 imposes a normal tax upon the net income of every individual in excess of certain credits provided. Section 12 imposes a surtax upon the surtax net income of every individual. Section 51 provides that every individual having for the taxable year a gross income of $600 or more shall make a return setting forth the items of gross income and the deductions and credits allowed. Section 58 provides that every individual (with exceptions not material here) shall make a declaration of his estimated tax for the taxable year. Although the petitioner does not specifically refer to these provisions, they obviously are the ones which he contends are unconstitutional as applied to him, on the ground that they infringe upon the freedom of religion guaranteed by the first amendment.

An act of Congress is not lightly to be set aside; doubts must be resolved in its favor; and the presumption of validity is particularly strong in the case of a revenue measure. As stated by the Supreme Court in *Nicol* v. *Ames*, 173 U.S. 509:

> It is always an exceedingly grave and delicate duty to decide upon the constitutionality of an act of the Congress of the United States. The presumption, as has frequently been said, is in favor of the validity of the act, and it is only when the question is free from any reasonable doubt that the court should hold an act of the lawmaking power of the nation to be in violation of that fundamental instrument upon which all the powers of the Government rest. This is particularly true of a revenue act of Congress. The provisions of such an act should not be lightly or unadvisedly set aside, although if they be plainly antagonistic to the Constitution it is the duty of the court to so declare. The power to tax is the one great power upon which the whole national fabric is based. It is as necessary to the existence and prosperity of a nation as is the air he breathes to the natural man. It is not only the power to destroy, but it is also the power to keep alive.

As exemplified by one case cited by the petitioner, *Murdock* v. *Pennsylvania*, 319 U.S. 105, a tax may, under some circumstances, so contravene the guarantee of the first amendment as to be unconstitutional. In that case a municipal ordinance which, as construed and applied, required the payment of a license tax by members of a religious sect engaged in the distribution of certain religious books and pamphlets and the solicitation of funds, was held unconstitutional as being contrary to the 1st amendment (which the 14th amendment makes applicable to the States). The Supreme Court took the view that the license tax amounted to an exaction as a condition to the pursuit of religious activities. However, in so holding the Court stated:

> We do not mean to say that religious groups and the press are free from all financial burdens of government. See *Grosjean* v. *American Press Co.*, 297 U.S. 233, 250. We have here something quite different, for example, from a tax on the income of one who engages in religious activities or a tax on property used or employed in connection with those activities. It is one thing to impose a tax on the income or property of a preacher. It is quite another thing to exact a tax from him for the privilege of delivering a sermon.

It is clear, therefore, that a taxing statute is not contrary to the provisions of the first amendment unless it directly restricts the free exercise by an individual of his religion.[1] We think it clear that, within the intendment of the first amendment, the Internal Revenue

---

[1] In this connection the views of the dissenting Justices in the cited case are pertinent. Mr. Justice Reed in his dissent stated in part:

"Nor do we understand that the Court now maintains that the Federal Constitution frees press or religion of any tax except such occupational taxes as those here levied. Income taxes, ad valorem taxes, even occupational taxes are presumably valid, save only a license tax on sales of religious books.

\*        \*        \*        \*        \*        \*        \*

"\* \* \* It has never been thought before that freedom from taxation was a perquisite attaching to the privileges of the First Amendment. The National Government grants exemptions to ministers and churches because it wishes to do so, not because the Con-

Code, in imposing the income tax and requiring the filing of returns and the payment of the tax, is not to be considered as restricting an individual's free exercise of his religion.

On brief and in the statements which the petitioner filed with the respondent in lieu of filing returns, he emphasizes that in his opinion one who has conscientious or religious scruples against war should not only refuse to engage in war but should go even further and refuse to pay a tax which may be used in whole or in part for the prosecution of war. He seems to premise his argument upon the assumption that the Constitution safeguards a pacifist or conscientious objector from a requirement of military service. In this he is wrong; it is well established that no man has a constitutional right to be free from a call to military service and that it is only by virtue of acts of Congress that conscientious objectors are exempt in whole or in part from military service. *Arver* v. *United States*, 245 U.S. 366 (selective draft cases); *United States* v. *Palmer*, 223 F. 2d 893 (C.A. 3); and *George* v. *United States*, 196 F. 2d 445 (C.A. 9). It would seem to follow, *a fortiori*, that the Constitution does not relieve a pacifist or a conscientious objector of the duty to pay taxes, even though they may be used for war or for preparation for defense. Indeed, article I, section 8, of the Constitution specifically provides that the Congress shall have power to lay and collect taxes and provide for the common defense and general welfare of the United States, and to provide for and maintain an Army and a Navy. This article and the 16th amendment to the Constitution empower the Congress to lay and collect taxes on incomes from whatever source derived.

It is our conclusion that the tax imposed upon the petitioner by the Internal Revenue Code and the requirement that he file returns and pay the tax, are not in violation of the Constitution. There is no doubt as to the sincerity of the petitioner's beliefs, but in our opinion he does not have the right to refuse to comply with the law, even though the policies of the Federal Government and the manner of expenditure of its revenues may not accord with the dictates of his conscience or religion.[2]

On brief the petitioner also contends that he cannot be compelled to file returns or pay taxes for war purposes "by virtue of the Nürnberg Principles of International Law," which he alleges, in effect, would

stitution compels. Internal Revenue Code, §§ 22(b)(6), 101(6), 812(d), 1004(a)(2)(B). * * *"

Mr. Justice Frankfurter in his dissent stated in part:

"* * * There is nothing in the Constitution which exempts persons engaged in religious activities from sharing equally in the costs of benefits to all, including themselves, provided by government."

[2] It is of interest to note that the Supreme Court has held that the interest of a taxpayer in the moneys of the Federal Treasury are too indeterminate, remote, uncertain, and indirect to furnish a basis for an appeal to the preventive powers of the Court over their manner of expenditure. *Massachusetts* v. *Mellon*, 262 U.S. 447.

make him, as an individual, liable for a violation of international law. We are of the opinion that there is no principle of international law which operates to relieve citizens from their tax obligations and liabilities under the laws of their country or which imposes upon them individual responsibility for the use made of tax revenue. Our opinion is in accord with the view expressed in *Farmer* v. *Rountree*, 149 F. Supp. 327 (D. Tenn.), affirmed per curiam 252 F. 2d 490 (C.A. 6), certiorari denied 357 U.S. 960, wherein it was also stated: "The Nuremberg Judgment was based upon altogether different facts and does not support the theories of immunity here advanced."

We hold that the respondent properly determined the deficiencies in tax for each of the years in question. It follows, from what has been said above, that the petitioner's failure to file returns and declarations cannot be considered as being due to reasonable cause within the meaning of sections 291(a) [3] and 294(d)(1)(A) [4] of the Internal Revenue Code of 1939, merely because he was opposed to the Government's use of its funds for war or preparation for possible war. The petitioner also urges that his failure to file was due to reasonable cause in that he *believed* the statute to be unconstitutional in imposing a tax upon him in view of his religious and conscientious convictions. Whether under some circumstances a belief of unconstitutionality of a tax law might be considered reasonable cause for failure to file, we need not here decide. Here the petitioner did not act as an ordinary prudent man would act in arriving at a conclusion upon the constitutional question. He testified that he did not consult any expert on constitutional or tax law and that despite the fact that he did not have an informed opinion as to what the courts might hold on the constitutional question he nevertheless was prepared to refuse to file and pay the tax. Under all the circumstances we have concluded and have found as a fact that the petitioner's failure to file returns and declarations was not due to reasonable cause but was due to willful neglect.

---

[3] Section 291(a), provides in part:

(a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. * * *

[4] Section 294(d)(1)(A) provides in part:

(A) Failure to File Declaration.—In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment.

With respect to the additions to tax under section 293(b) of the Internal Revenue Code of 1939, on account of fraud,[5] the burden of proof is upon the respondent. Sec. 1112, I.R.C. 1939. Fraud is a question of fact. It is never presumed but must be shown by clear and convincing evidence. *Archer* v. *Commissioner*, 227 F. 2d 270 (C.A. 5), and *W. A. Shaw*, 27 T.C. 561. "Fraud" has been defined in Webster's New Collegiate Dictionary as follows:

1. Deception; deceit; trickery. 2. Artifice; trick. * * * 4. Law. An intentional perversion of truth to induce another to part with some valuable thing belonging to him, or to surrender a legal right.

It is defined in Black's Law Dictionary as follows:

Fraud consists of some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him an injury.

It has been held that willful failure to file returns is not alone sufficient to sustain a conclusion that there was an intent to defraud, but that there must be some evil motive and some conduct, the likely effect of which would be to mislead or to conceal. See *Spies* v. *United States*, 317 U.S. 492 (a criminal case). And in *E. S. Iley*, 19 T.C. 631, we stated that the very heart of the fraud issue is the intent to defraud the Government by calculated tax evasion.

Here the evidence shows that the petitioner did not attempt to conceal from the respondent the fact that he had earnings; rather, he advised the respondent at the time for filing of the returns for each of the years in question that he did not intend to file returns and stated his reasons. His failure to file returns and thus advise the respondent of the amount of his income was due entirely to his sincere belief that he should not file returns and pay taxes, since he was averse to the use of Federal funds for war and preparation for war. At the time for filing returns he advised the respondent's representatives that he was willing to talk with them and he thereafter cooperated fully with them in their investigation. We are completely satisfied that there was not on the part of the petitioner any bad faith, intentional wrongdoing, sinister motive, or intent to mislead or deceive the respondent. Under these circumstances it is our conclusion, and we have found as a fact, that no part of the deficiency in tax for any year in question was due to fraud with intent to evade tax.

In view of the foregoing, the determinations of the respondent are approved in all respects except his determinations of additions to tax under section 293(b) and section 294(d)(2) of the Internal Revenue Code of 1939.

*Decision will be entered accordingly.*

---

[5] Section 293(b) provides:

(b) FRAUD.—If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).