Lawrence R. VELVEL, on behalf of himself and all others similarly situated within the United States Judicial District of Kansas, Plaintiff,

v.

Lyndon B. JOHNSON, President, Dean Rusk, Secretary of State, and Clark Clifford, Secretary of Defense, Defendants.

Civ. A. No. T–4417.

United States District Court
D. Kansas,
July 30, 1968.

848

Lawrence R. Velvel, Lawrence, Kan., pro se.

Benjamin E. Franklin, U. S. Atty., Elmer Hoge, Asst. U. S. Atty., Topeka, Kan., for defendants.

## MEMORANDUM OF DECISION

TEMPLAR, District Judge.

This action was instituted by plaintiff on behalf of himself and all others similarly situated within the United States Judicial District of Kansas against Lyndon B. Johnson, as President, Dean Rusk, as Secretary of State, and Clark Clifford, as Secretary of Defense.

It appears that service was had upon defendants Rusk and Clifford but not upon the President.

A pleading labeled "Defendants' Motion to Dismiss" has been filed on behalf of the "defendants" by the United States Attorney for the District of Kansas and his assistant. The grounds set forth in the Motion to Dismiss are as follows:

1. Plaintiff lacks standing to sue.

2. The case presents a non-justiciable political question.

3. This is a suit against the United States to which it has not consented.

This Motion is accompanied by a Memorandum of Law offered in support of the defendants' Motion to Dismiss.

The allegations of plaintiff's Complaint are uncomplicated. Aside from the allegations of jurisdiction and the statement that it is brought as a class action on behalf of numerous persons in the District of Kansas who are suffering financial, physical and other injuries because of the defendants' unconstitutional actions in carrying on the Vietnamese war without a Congressional declaration of limited or general war, it is alleged that:

"Article I, Section 8, Clause 11 of the United States Constitution states, in clear and unequivocal language, that the *Congress* shall have the power to declare war. Despite this explicit Constitutional directive, the defendants, and the predecessor in office of defendant Clifford, have for approximately three and one-half years conducted a large scale war in Viet Nam without a Congressional declaration of limited or general war. In so doing, the defendants have unlawfully exceeded and are continuing to unlawfully exceed their Constitutional authority by conducting a war without legal authorization, and have, in effect, unlawfully arrogated unto themselves the Congressional power to declare war."

The prayer of the complaint prays that this Court issue a declaratory judgment that defendants have acted unconstitutionally by carrying on the Vietnamese war without a Congressional declaration of limited or general war. Alternatively, and if the situation at the time should warrant, plaintiff prays that this Court issue an order requiring that defendants either (1) obtain a Congressional declaration of limited or general war or (2) discontinue the fighting in Vietnam, such discontinuance to be carried out with all deliberate speed.

After defendants filed their Motion to Dismiss Plaintiff's Complaint on the grounds alleged, plaintiff countered with a Motion for Summary Judgment based on the ground that there are no genuine issues as to any material fact in this case and that, therefore, plaintiff is entitled to a judgment as a matter of law. This motion, filed on May 17, 1968, was supported by a copious and persuasive brief. Defendants thereafter, on June 13, 1968, countered with a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. Plaintiff then, on June 20, 1968, filed an Addendum to

the Memorandum of Law in Support of his Motion for Summary Judgment. Thereafter, on July 11, 1968, the matter was orally presented to the Court by the plaintiff personally and by defendants' attorneys.

Following the argument, the defendants' counsel, on July 12, 1968, filed a Supplemental Memorandum in Support of Defendants' Motion to Dismiss. At oral argument on the day previous, defendants' counsel had requested and were given leave to file this memorandum. Plaintiff has now presented to the Court a Reply to Defendants' Supplemental Memorandum and has asked leave to file it. Leave is granted and all briefs, memorandums and arguments of plaintiff and of defendants' counsel have been carefully reviewed and considered by the Court.

We are not dealing here with a situation in which a taxpayer plaintiff complains that an act of Congress appropriates money specifically for an unconstitutional purpose but the gravamen of the proceeding turns on the question involving the power of the President of the United States and the heads of the executive departments of government, at his direction, to carry on military activity in a foreign country absent a formal and constitutional declaration of war by the duly elected and constituted Congress of the United States.

Generally speaking, it is not within the province of the judiciary to determine political questions. This has been recognized by the Court of Appeals for the Tenth Circuit.

"The existence of war and the restoration of peace are determined solely by the political departments of our government, and such determinations are conclusively binding upon the courts in all matters of state or public concern * * *." New York Life Insurance Company v. Durham, 166 F.2d 874 (10th Cir.).

Again, in Swallow v. United States, 325 F.2d 97 (10th Cir.), that Court announced (p. 98):

"A federal court will not review the foreign policy of the government nor the wisdom of the congressional appropriations for welfare purposes. This is an area exclusively within the jurisdiction of the legislative and executive branches, even when the allegation is made that income tax monies are being used to carry on an aggressive war. Farmer v. Rountree, D.C. Tenn., 149 F.Supp. 327, aff'd 6 Cir., 252 F.2d 490, cert. denied 357 U.S. 906, 78 S.Ct. 1150, 2 L.Ed.2d 1156. * * *."

The *Farmer* case cited in *Swallow* approved the following determinations of the trial court from which that appeal was taken, (149 F.Supp. 327):

"Foreign policy of United States is exclusive province of executive and legislative branches of government, and in this area of responsibility, as well as in all questions of national defense, it is imperative that courts strictly observe limitations upon their power and refrain from rendering any judgment which would embarrass the policy decisions of government or involve them in confusion and uncertainty."

And,

"Courts are constituted to adjudicate cases and controversies properly coming within judicial sphere of action, and they have no right or authority to resolve political or governmental questions, or to review issues of governmental policy entrusted to the executive and legislative departments."

The Tenth Circuit has reaffirmed this view in the later case of Ward v. United States, 344 F.2d 316 (10th Cir.).

Courts have no jurisdiction to decide political questions. These are such as have been entrusted by the sovereign for decision to the so-called political departments of government, as distinguished from questions which the sovereign has set to be decided in the courts. Even under a government where there is no express constitutional delegation of pow-

ers, this limitation upon judicial authority has long been recognized. Sevilla v. Elizalde, 72 App.D.C. 108, 112 F.2d 29.

■ Though it is not always a simple matter to define the meaning of the term "political question," it is generally used to encompass all questions outside the sphere of judicial power. Among the questions which have been recognized as political rather than judicial in nature, none comes more clearly within the former classification than those which involve the propriety of acts done in the conduct of the foreign relations of our government. Z. & F. Assets Realization Corp. v. Hull, 72 App.D.C. 234, 114 F.2d 464, 468. Indeed, it appears that the courts have unanimously agreed to refrain from interfering with that great group of matters involving foreign relations of the United States with other nations. See Finkelstein, Judicial Self Limitation, 37 Harvard Law Rev. 338, 347.

In Oetjen v. Central Leather Co., 246 U.S. 297, 302, 38 S.Ct. 309, 311, 62 L.Ed. 726, it was held that:

"The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative — 'the political' — departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision."

The President, constitutionally, is Commander in Chief of the Army and Navy and of the militia of the several states when called into the actual Service of the United States. He is entrusted with the right and the power of protecting the interests of the country and to carry on such activities in managing our concerns with foreign nations. He must be competent and privileged to determine when, how, and upon what basis the executive directions and orders he gives as Commander in Chief will likely produce the greatest measure of success. For his conduct, he is responsible to the Constitution.

The President is invested by the Constitution with important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character and to his own conscience. See Marbury v. Madison, 5 U.S. 137, 2 L.Ed. 60.

■ The judiciary is not that department of the government to which the assertion of its interests as against foreign powers is confided. It follows that the courts should do no act which, directly or indirectly, would embarrass the government in conducting its international affairs. It has been uniformly held that those questions, the decision of which, as it might involve war or peace, must be primarily dealt with by those departments of government which have the power to adjust them by negotiation, or to enforce them by war. In such cases, the judicial department of this government follows the action of the political branch, and will not embarrass the latter by assuming an antagonistic jurisdiction. See United States v. Lee, 106 U.S. 196, 209, 1 S.Ct. 240, 27 L.Ed. 171.

■ Clearly, the activities of our government, under the direction of the President, fall within the political question classification.

■ On questions involving issues of magnitude so great as here involved, this Court feels obliged to follow the declarations of its Court of Appeals unless the policy established in the Circuit Court of Appeals appears to be overturned by a ruling of the United States Supreme Court.

The plaintiff, with great vigor, argues that under the case of Flast v. Cohen, decided June 10, 1968, the opinion appearing in 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947, that his right and standing to maintain this action is clearly established. That decision deals with the question of the standing of an individual citizen, a taxpayer, to maintain an action for the purpose of questioning a specific expenditure of federal money under the direction of Congress by legis-

lation claimed to be unconstitutional because the money was appropriated for a purpose in violation of the Establishment Clause of the First Amendment which prohibits Congress from making a law respecting the establishment of religion.

*Flast* contains much that is instructive. The question of standing is discussed (88 S.Ct. 1952):

"Standing is an aspect of justiciability and, as such, the problem of standing is surrounded by the same complexities and vagaries that inhere in justiciability. Standing has been called one of 'the most amorphous [concepts] in the entire domain of public law.' Some of the complexities peculiar to standing problems result because standing 'serves, on occasion, as a shorthand expression for all the various elements of justiciability.'
* * *

"Despite the complexities and uncertainties, some meaningful form can be given to the jurisdictional limitations placed on federal court power by the concept of standing. The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'
* * * In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable."

Again, the Supreme Court in that opinion (same page) says:

"The various rules of standing applied by federal courts have not been developed in the abstract. Rather, they have been fashioned with specific reference to the status asserted by the party whose standing is challenged *and to the type of question* he wishes to have adjudicated. (Emphasis supplied). We have noted that, in deciding the question of standing, it is not relevant that the substantive issues in the litigation might be nonjusticiable. However, our decisions establish that, in ruling on standing, it is both appropriate and necessary to look to the substantive issues for another purpose, namely, to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated."

It must be observed that in *Flast* the Court did not throw open the federal courts to a challenge by taxpayers of every Congressional act which authorized or directed the expenditure of money on grounds of unconstitutional legislative expenditure. The case does hold that the complaining taxpayer, to maintain his suit, must show:

(1) A logical link between his status and the type of legislative enactment attacked—(He will only be a proper party as a taxpayer when he alleges the unconstitutionality of Congressional action under the taxing and spending power).

(2) That the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of Congressional taxing and spending power. (Not simply that the enactment is generally beyond the powers delegated to Congress under Article I, Sec. 8).

Plaintiff here does not come within the terms outlined in *Flast* which would give him standing to maintain the present suit for the reason that the Supreme Court, in that opinion, was careful to limit permissible actions to the challenging of acts appropriating and expending public money in violation of the Constitution. On page 1954 of 88 S.Ct. the Supreme Court was careful to point out that,

"The taxpayer-appellants in this case have satisfied both nexuses to support

their claim of standing under the test we announce today. Their constitutional challenge is made to an exercise by Congress of its power under Art. I, § 8, to spend for the general welfare, and the challenged program involves a substantial expenditure of federal tax funds."

In addition, the Court is of the opinion that the instant case does not fall within the "cases" or "controversies" jurisdictional restriction set forth in the Constitution of the United States. As was stated in *Flast*, the term "justiciability" is the word of art long employed by the courts of our land to give expression to the case and controversy doctrine. On page 1950 of 88 S.Ct. the Court stated:

"Justiciability is itself a concept of uncertain meaning and scope. Its reach is illustrated by the various grounds upon which questions sought to be adjudicated in federal courts have been held not to be justiciable. *Thus, no justiciable controversy is presented when the parties seek adjudication of only a political question * * *"* (Emphasis supplied).

And again, (p. 1950 of 88 S.Ct.):

"Thus, a party may have standing in a particular case, but the federal court may nevertheless decline to pass on the merits of the case because, for example, it presents a political question."

This is not an action brought specifically for the purpose of challenging a federal taxing or spending program as is required by *Flast*, but is an action seeking a determination of a "political question" by the judicial branch of our government.

■ The judiciary may not encroach upon or usurp executive function. Effectiveness in handling the delicate problems of foreign relations requires the implied power of the President to do so as the "sole organ of the federal government in the field of international relations." See United States v. Pink, 315 U.S. 203, 229, 62 S.Ct. 552, 565, 86 L.Ed. 796. Plaintiff demands that this Court invade an area of government for which no authority has been granted it. That the executive or legislative branches of the government have seen fit to carry on a limited military action without a formal declaration of war by the legislative branch is a matter resting solely within the discretion of those duly elected representatives of the people. There may be sound reason for not making a formal declaration of war. Such a declaration might bring on an international conflagration which our political leaders are carefully seeking to avoid. This Court has neither the information necessary nor the power required to question the wisdom of the manner in which the military activity of our country is being conducted.

■ There can be no doubt that by the provisions of the Constitution, the power to "declare war" is vested in Congress. National Savings and Trust Co. v. Brownell, 95 U.S.App.D.C. 370, 222 F.2d 395. But, though the constitutional power to "declare war" vests in Congress and from a constitutional point of view, for there to be a state of war between nations, a declaration of it by Congress is required, whether a war, constitutionally considered, exists, is not to be determined from facts and circumstances. (p. 397).

■ Plaintiff asks this Court to determine that a state of war exists between the United States and the Government of North Vietnam. This Court has neither the precedent, the capacity, the facility, nor the inclination to indulge in such an endeavor. The Court does not believe that the language of *Flast* justifies the plaintiff's contention that it has overturned the rules of standing laid down in Frothingham v. Mellon, 267 U.S. 447, 43 S.Ct. 597, 67 L. Ed. 1078, and other cited cases. On the contrary, careful consideration of *Flast* requires the conclusion that the Supreme Court did not go so far as to authorize

an individual taxpayer to challenge the political acts of the executive.

█ It is not the function of the judiciary to entertain private litigation, even by a citizen (and taxpayer) which challenges the legality, the wisdom, or the propriety of the President, as Commander in Chief, in sending our armed forces abroad or to any particular region and keeping them there. See Johnson v. Eisentrager, 339 U.S. 763, 789, 70 S.Ct. 936, 94 L.Ed. 1255. Decisions of basic national policy, as of foreign policy, presents no judicially cognizable issue and hence the courts are not empowered to decide them. See Pauling v. McNamara, 118 U.S.App.D.C. 50, 331 F. 2d 796, 798.

Plaintiff argues that Congress has been forced, presumably against its better judgment, because of political considerations, to appropriate money for carrying on military operations in Vietnam. He thus implies that the legislative branch of government does not ratify the executive's conduct of such actions by appropriating money to carry on what he alleges to be unconstitutional activities. But, this argument, contrary to plaintiff's intention, sustains the view that the matter involved is indeed a political question for otherwise no congressman or senator would be concerned with his political survival should he cast a vote against appropriations designed to carry on the Vietnam military operation. Congressional measures could be enacted, if considered feasible, which would require the termination of military activity by our government anywhere in the world. This Court cannot infer that courage is lacking among the members of Congress, should the majority of the elected representatives of the people conclude to take such action.

This Court cannot read into any statutory provisions its jurisdiction to entertain this action, including the provisions of the General Jurisdiction Act, 28 U.S. C.A. § 1346. The Court must hold that Congress has not granted jurisdiction to it to adjudicate the issues involved in this case.

█ For the reasons indicated, the Court must hold as defendants contend:

(1) That plaintiff lacks standing to sue.

(2) That the case presents a non-justiciable political question.

(3) That this is, in effect, a suit against the United States to which it has not consented.

The defendants' Motion to Dismiss should, therefore, be sustained.

It is, therefore, by the court ordered, adjudged and decreed that the Complaint and Action of the plaintiff filed herein, be, and the same is hereby, dismissed.