MARGARET G. BOWMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bowman v. Commissioner
Docket Nos. 3725-72, 3052-73
United States Tax Court
T.C. Memo 1976-206; 1976 Tax Ct. Memo LEXIS 194; 35 T.C.M. (CCH) 881; T.C.M. (RIA) 760206; June 28, 1976, Filed As amended *194 Petitioner claimed deductions on her returns for the years in issue for contributions to organizations which were opposed to the Vietnam War. Held: Since a substantial part of the activities of these organizations was carrying on "propaganda" within the meaning of sec. 170 (c) (2) (d), respondent's disallowance of these deductions is sustained. Held further: Petitioner's system of alternative self-taxation, adopted in accordance with her religious beliefs, does not relieve her of her tax liabilities arising under the Internal Revenue Code. Susan Jo Russell, 60 T.C. 942 (1973), Abraham J. Muste, 35 T.C. 913 (1961). Margaret G. Bowman, Pro se. Brian J. Seery and Lowell F. Raeder, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined the following deficiencies in petitioner's federal income taxes for the following years: Docket No.
Year
Deficiency
3725-72
1970
$288.41
3052-73
1971
211.80
In his answer to the petition in docket No. 3725-72 respondent asserted that petitioner was liable for a deficiency in income tax for the calendar year 1970 in the amount of $1,303.35. *196 The cases have been consolidated for purposes of trial, briefing and opinion. Two issues are presented for our consideration. The first is whether certain organizations, recipients of gifts from petitioner, satisfy the requirements of section 170(c), thereby entitling petitioner to deduct the amount of such gifts as charitable contributions. The second is whether the First Amendment's guarantee of freedom of religion requires us to recognize the validity of petitioner's plan of self-taxation as an alternative to the payment of taxes pursuant to provisions of the Internal Revenue Code of 1954. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.
Petitioner, Margaret G. Bowman, resided in Philadelphia, Pennsylvania at the time she filed her petitions herein. Petitioner filed federal income tax returns for the calendar years 1970 and 1971 with the district director of internal revenue, Philadelphia, Pennsylvania. Petitioner has ben a member of the Religious Society of Friends, whose members are commonly known as Quakers, since birth and *197 as such strongly believes that the dictates of one's conscience occupy a paramount place in the life of an individual. In accordance with basic Quaker tenets she has always held a deep-seated opposition to violence and sincerely believes that it is her duty to take affirmative action in opposition thereto as well as to refrain from active participation in acts of violence. In accordance with her beliefs petitioner, in 1970, contributed $45 to the National War Tax Resistance (hereinafter the NWTR) and $135 to the "A Quaker Action Group" (hereinafter QAG) and deducted these amounts as charitable contributions on her income tax return for that year. On her 1970 return she also claimed an adjustment to her gross income in the amount of $5,363 in order not to "commit the immorality of paying for any part of My Lai or other acts of war." Respondent disallowed the deductions for charitable contributions in his notice of deficiency in docket No. 3725-72 and in his answer to the petition in the same case asserted that petitioner's adjustment to gross income was improper. Respondent filed a motion for judgment on the pleadings regarding the disallowance of the $5,363 adjustment to gross *198 income and the disallowance of the deductions for charitable contributions. On March 29, 1974 we granted respondent's motion as it related to the adjustment to gross income but denied the motion as it related to the deductibility of petitioner's contributions. On her 1971 income tax return petitioner claimed the following deductions which respondent disallowed in his notice of deficiency for that year: Item
Amount
(1) Peace Protective Reaction
$1,147.47
(2) Contributions
NWTR
25.00
QAG
100.00
Philadelphia War Tax Resistance
105.00
Harrisburg Area Peace Center
20.00
Draft Information Center
20.00
On May 8, 1974 we granted respondent's motion for judgment on the pleadings as it related to the disallowance of the deduction for the Peace Protective Reaction but denied the motion as it related to the deductibility of petitioner's contributions. These contributions, like those in 1970, were made in accordance with petitioner's religious beliefs. The QAG was founded in 1966 for the purpose of raising the consciousness of the American people with respect to the Vietnam War. The means employed to this end were humanitarian appeals to the public as exemplified *199 by the transmittal of medical supplies to wounded Vietnamese civilians. The QAG did not request an exemption pursuant to section 501 from the internal revenue service. The Harrisburg Area Peace Center was established to promote social justice, express opposition to the Vietnam War, and support members of the peace movement who were facing criminal actions.The means employed to achieve these goals comprised marches, protests, and educational campaigns directed at the general public. The NWTR is, in effect, a clearing house for information pertaining to the federal government's dispersal of tax revenues with a focus on those revenues being channeled into defense spending. The NWTR also established "war resistance alternative funds", similar in nature to a community chest, to which war protestors could contribute money they would otherwise pay to the government in the form of taxes.The NWTR never sought an exemption from the internal revenue service under section 501. The Philadelphia War Tax Resistance (hereinafter the PWTR) was organized in 1970 as a forum for individuals to express their concern over the war in Vietnam. The cornerstone of PWTR policy was nonpayment of that *200 portion of an individual's taxes that would be employed to finance the war as a means of compelling the removal of American troops in Southeast Asia. The portion so withheld was then to be donated to a community fund from which the PWTR made noninterest bearing loans to various educational and social organizations. The PWTR also sought to attain its objective through the dissemination of publications, speeches, and workshops. The Draft Information Center, as its name suggests, was established to inform people subject to conscription about their alternatives under the draft law. OPINION Section 170, in pertinent part provides: SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. * * *
(c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the *201 use of-- * * *
(2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. In Slee v. Commissioner, 42 F. 2d 184 (2d Cir. 1930), the issue before the court was whether the American Birth Control League was organized and operated solely for religious, charitable, scientific, literary, or educational purposes within the meaning of section 214(a) (11) (B), Revenue Act of 1921, 42 Stat. 227 which *202 imposed no specific limitations on the political activities of tax-exempt organizations. In holding the League was not so organized and operated the court stated at 185: Political agitation as such is outside the statute, however innocent the aim, though it adds nothing to dub it "propaganda," a polemical word used to decry the publicity of the other side. Controversies of that sort must be conducted without public subvention; the Treasury stands aside from them. In 1934 Congress amended the Code to deny expressly tax exempt status to an organization, otherwise qualifying, a substantial part of the activities of which "is carrying on propaganda, or otherwise attempting, to influence legislation" and to deny expressly deductions to individuals for contributions to such organizations. Sections 101(c), 23(0) (2), Revenue Act of 1934, 48 Stat. 700, 690. These limitations, presently embodied in sections 172(c) (2) (D) and 501(c) (3), represent a clear expression of Congressional policy that the United States Treasury should be neutral in the political arena, not-withstanding the fact that an organization, otherwise qualifying, bestows upon the public a benefit, the financial burden *203 for which would otherwise be borne by the federal government. Haswell v. United States, 205 Ct. Cl. 421 (1974), cert. den, 419 U.S. 1107 (1975); Christian Echoes National Ministry, Inc. v. United States, 470 F. 2d 849, 854 (10th Cir. 1972), cert. den. 414 U.S. 864 (1973); H. Rept. No. 1860, 75th Cong., 3d Sess. (1939), 1939-1 C.B. (Part 2) 729, 742. Put another way, it is clear the statutory language governing the resolution of this issue was designed to preclude federal subsidization of organizations carrying on substantial activities that are inherently political in nature. Hence, in a case such as this, the issue is not whether the organization and its activities are worthy, but whether those activities fall within the ambit of the language and spirit of section 170(c) (2) (D). Estate of Anita McCormick Blaine, 22 T.C. 1195 (1954). We think it obvious that the organizations to which petitioner contributed were, to use the language of the pertinent regulations, [1] action organizations. Although the record is somewhat sketchy on this issue, it is apparent that each of the organizations *204 was a forum for the expression of dissent to American policies in Vietnam with the primary (if not sole) objective of each being the cessation of hostilities in Southeast Asia. In seeking to achieve this wholly political goal, one attainable solely by government action, these organizations carried extensive campaigns to the public. They further used citizens to take affirmative action to make their opposition known.
In this connection petitioner argues that the function of these campaigns was public education. However, to our mind, it cannot be gainsaid that the activities engaged in by these organizations constituted portions of an overall program that was designed to educate people into agreeing with the views of petitioner and her fellow organization members. Such activities can fairly be labeled political in a broad sense. This being so, it is immaterial that these organizations acted, indisputedly, out of a sincere desire to promote policies they believed to be for the benefit of all citizens. Kuper v. Commissioner, 332 F. 2d 562 (3d Cir. 1964), cert. den. 379 U.S. 920 (1964). We find that the organizations *205 at issue fall within the Regulations' definition of "action organization" (Sec. 1.501(c)(3)-1(c)(3)(iv), Income Tax Regs.). [2] Respondent's disallowance of petitioner's deductions for contributions thereto is hereby sustained. Petitioner also maintains that her religious beliefs preclude her payment of taxes that would be utilized to finance war and that we should, therefore, sustain her deductions under the First Amendment of the Constitution as a form *206 of alternative self-taxation. As noted in our findings of fact, petitioner is a devout Quaker, sincere in her beliefs, and we do not in any way question her motives in pursuing the course she has charted for herself. We have nothing but respect for her efforts to find a meaningful way in which to express the dictates of her conscience. However, the clear intent of our founding fathers was that we have a government of laws and not of men. See, for example John Adams, Constitution of Mass., Declaration of Rights, Art. 30 (1780). [3] Such a system of government cannot work if every citizen may freely make a determination which laws, as a matter of conscience, he will obey and which laws he will not obey. Furthermore, and more specifically, it is well-settled that a taxpayer's opposition to the policies of the federal government does not relieve her from her obligation to pay taxes otherwise due whether that disagreement is grounded in the First Amendment, international law, or *207 any other doctrine. United States v. Malinowski, 472 F. 2d 850, 857 (3d Cir. 1973), cert. den. 411 U.S. 970 (1973); Autenreith v. Cullen, 418 F. 2d 586 (9th Cir. 1969), cert. den. 397 U.S. 1036 (1970); Susan Jo Russell, 60 T.C. 942 (1973); Abraham J. Muste, 35 T.C. 913 (1961). Wisconsin v. Yoder, 406 U.S. 205 (1972), involving as it did a question of state requirements with respect to public schooling, is not relevant to the question of the applicability of the First Amendment to the federal government's right to collect taxes without which there would be no federal government of any consequence. Therefore, we believe petitioner's reliance on this decision to be misplaced. Decisions will be entered for the Respondent. Footnotes
1. Sec. 1.501(c) (3)-1(c) (3).↩
2. Sec. 1.501(c)(3)-1(c)(3). (iv) An organization is an "action" organization if it has the following two characteristics: (a) Its main or primary objective or objectives (as distinguished from its incidental or secondary objectives) may be attained only by legislation or a defeat of proposed legislation; and (b) it advocates, or campaigns for, the attainment of such main or primary objective or objectives as distinguished from engaging in nonpartisan analysis, study or research and making the results thereof available to the public. In determining whether an organization has such characteristics, all the surrounding facts and circumstances, including articles and all activities of the organization, are to be considered.↩
3. This theme was reinforced by Daniel Webster when he said "Whatever government is not a government of laws is a despotism, let it be called what it may". Speech↩, Bangor, Maine, August 25, 1835.