BRUCE B. GRAVES and RUTH K. GRAVES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Graves v. Commissioner
Docket No. 5154-80.
United States Tax Court
T.C. Memo 1981-154; 1981 Tax Ct. Memo LEXIS 588; 41 T.C.M. (CCH) 1204; T.C.M. (RIA) 81154; March 31, 1981. Bruce B. Graves and Ruth K. Graves, pro se. Larry D. Anderson, for the respondent. PARKER
MEMORANDUM OPINION PARKER, Judge: This matter is before the Court on respondent's motion for judgment on the pleadings, filed September 29, 1980, pursuant to Rule 120, Tax Court Rules of Practice and Procedure.[1] Respondent filed a memorandum brief in support of his motion on September 29, 1980, and petitioners filed a written response to respondent's motion with attached exhibits on January 28, 1981. Because we have considered petitioners' exhibits, which are matters outside the pleadings, respondent's motion shall be treated as one for summary judgment under Rule 121. See Rule 120(b). Respondent *589 determined a deficiency in petitioners' Federal income tax for 1977 in the amount of $ 5,119. The only issue for decision is whether petitioners are entitled to a 50 percent "war tax credit" in the amount of $ 5,119 for the year in question. Petitioners were legal residents of Ypsilanti, Michigan, when they filed their petition in this case. Petitioners timely filed a joint Federal income tax return for 1977 with the Internal Revenue Service Center at Cincinnati, Ohio. Petitioners have long been active Quakers, and they adhere devotedly to the principles of total nonviolence espoused by the Religious Society of Friends. Both petitioners are pacifists and petitioner Bruce B. Graves has long been recognized as a "conscientious objector" for purposes of the Selective Service System. Petitioners reported gross taxes of $ 10,237 on their 1977 return and paid the sum of $ 10,212 to respondent in the form of $ 6,223.88 of withholding taxes on W-2 wages and a $ 3,989 check bearing the following handwritten conditional endorsement: Endorsement and/or deposit of this draft constitutes a legally binding agreement (a contract) that tax credits claimed in attached 1977 Federal IRS tax *590 return and its attachments will be refunded by the U.S. Government during the calendar year 1978 to be applied to appropriate charitable and human or peaceful uses, evidence for which shall be supplied on request. Accordingly, petitioners claimed a war tax credit of $ 5,119 on their joint return for 1977, which credit was disallowed by respondent in the statutory notice of deficiency. [2] We agree with respondent's determination. [3]
*591 Petitioners' primary contentions herein are that a forcible requirement to pay Federal taxes supportive of military activity (1) would violate a plethora of their constitutional rights, particularly the protection given by the First Amendment to the United States Constitution to their pacifist religious beliefs; (2) would violate their moral convictions and consciences; and (3) would constitute complicity in war crimes under the Nuremberg Principles. On November 22, 1976, this Court issued a Memorandum Opinion in Graves v. Commissioner, T.C. Memo. 1976-353, in which we rejected the same contentions that petitioners now make in their petition in this case, including their religious and moral objections to war and their rights under the Nuremberg Principles. [4] On July 7, 1978, the Sixth Circuit Court of Appeals affirmed our decision in Graves in a percuriam opinion. Graves v. Commissioner, 579 F. 2d 392 (6th Cir. 1978). Petitioners thereafter sought but were denied a rehearing and a rehearing en banc before the Sixth Circuit. Thereafter, petitioners filed a petition for a writ of certiorari, which the United States Supreme Court *592 denied on March 5, 1979. (440 U.S. 946 (1979).) Despite these adverse decisions disallowing petitioners' war tax credit for the year 1973, petitioners have petitioned again claiming a similar frivolous credit, this time with full knowledge and understanding of the position of this Court and of the Sixth Circuit to which any appeal would lie. Deductions and tax credits are a matter of legislative grace and are not allowable unless Congress has specifically provided for them. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). *593 For more than 20 years, in a long and undeviating line of cases, this Court and other courts have consistently disallowed deductions or credits taken by taxpayers for a portion of their taxes which they estimated to be attributable to military expenditures and to which they objected because of their religious, moral, and ethical objections to war and because of their claimed "rights" under various constitutional provisions and amendments thereto, the Nuremberg Principles, national and international law, and numerous international agreements and treaties. [5]
*594 Petitioners also argue that respondent, by negotiating the $ 3,989 check bearing their handwritten conditional endorsement, has contractually agreed to refund their war tax credit during 1978 so that they may use the funds for charitable, human, or peaceful purposes. We conclude, however, that respondent has neither accepted the terms of petitioners' endorsement nor entered into any contract by cashing that check and placing the proceeds in a special credit balance in their name pending the outcome of this case. In any event, Congress has not authorized respondent to relieve taxpayers, contractually or otherwise, of their duty to pay taxes simply because they disapprove of the Government's use of the money. If such were the case, the ability of the Government to function could be impaired or destroyed. Autenrieth v. Cullen, 418 F. 2d 586, 588-589 (9th Cir. 1969), cert. denied 397 U.S. 1036 (1970). Furthermore, we have repeatedly held that alternative payments of a portion of taxes used for war purposes to special funds for purposes such as peace, community, and charities do not relieve taxpayers of their income tax liability. Lull v. Commissioner, 602 F. 2d 1166, 1169 (4th Cir. 1979), *595 affg. per curiam Lull v. Commissioner and Herby v. Commissioner, Memorandum Opinions of this Court, cert. denied 444 U.S. 1014 (1980). Greenberg v. Commissioner, 73 T.C. 806, 812 (1980); Egnal v. Commissioner, 65 T.C. 255, 263 (1975); Russell v. Commissioner, 60 T.C. 942, 947 (1973). The legal theories relied on by petitioners have no support in the opinions of this Court or others. On this very point, which is particularly relevant to this case, we said in Hatfield v. Commissioner, 68 T.C. 895, 899 (1977): In recent times, this Court has been faced with numerous cases, such as this one, which have been commenced without any legal justification but solely for the purpose of protesting the Federal tax laws. This Court has before it a large number of cases which deserve careful consideration as speedily as possible, and cases of this sort needlessly disrupt our consideration of those genuine controversies. Moreover, by failing cases of this type, the protesters add to the caseload of the Court, which has reached a record size, and such cases increase the expenses of conducting this Court and *596 the operations of the IRS, which expenses must eventually be borne by all of us. While we do not doubt the sincerity and depth of petitioners' religious beliefs and convictions, we also cannot ignore their full knowledge that their claims in this Court are legally frivolous. Petitioners have once before had their day in this Court on these same war protest issues. They appealed that case to the Sixth Circuit, which affirmed our decision, and to the Supreme Court, which denied their petition for writ of certiorari. Under the circumstances, we think this is a proper case in which to impose damages under section 6673. Sydnes v. Commissioner, 74 T.C. 864, 870-873 (1980), on appeal (8th Cir. Nov. 10, 1980); Greenberg v. Commissioner, sura, 813-816; Wilkinson v. Commissioner, 71 T.C. 633, 639-643 (1979). Section 6673 directs the Tax Court, on respondent's motion or on its own motion, to impose damages "[w]henever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay." [6] The legislative history of this section as set out in Wilkinson v. Commissioner, supra, shows *597 that it was designed to discourage frivolous appeals. We have held that proceedings are instituted "merely for delay" within the meaning of section 6673 when a taxpayer repeatedly brings suit protesting the use of part of his taxes for war purposes. Greenberg v. Commissioner, supra.Here too petitioners were well aware before they filed their petition in this case that the tax laws neither permit a war tax credit nor recognize a conscientious objector status for tax purposes. Petitioners complain in their brief that: * * * the IRS should long ago have proposed to the Congress suitable legislation to resolve the issue of peace and conscientious objection. Surely, the respondent and the Courts are by this time aware *598 of the repeated proposals for a World Peace Tax Fund Act that have not come from the respondent as it should have long ago, but from others like ourselves working diligently against impossible odds for years upon years. The Court is aware, as petitioners are aware, that this is a political issue to be resolved at the polls and in the halls of Congress, not in the courts. Petitioners have long been active as "military tax refusers" and have shifted their focus from conscientious objection to military service to an attack on the Internal Revenue Service. As described in one of the articles submitted by petitioners: With the government relying more on the expenditure of tax money than on conscription of lives, it appeared to them [petitioners] that conscientious objection becomes irrelevant unless the concept is expanded beyond the confines of the Selective Service, to the system where it really counts--the Internal Revenue Service. Petitioners know there is no conscientious objector status for tax purposes and they are familiar with the long line of cases that have ruled against their claims. Petitioners still insist that as a matter of conscience they must "bear active *599 witness to [their] objections to war" and must register "continual protest by whatever means are available." However, bringing baseless lawsuits that clog the judicial machinery of this Court and deprive other taxpayers of a speedy resolution of their bona fide tax disputes is not an available means for petitioners to register their protests and to bear witness to their objections to war. Petitioners admit that their purpose is to delay if not prevent collection of the taxes altogether, saying they have selected their course of action because "[U]se of the funds in question for military purposes may be delayed if not prevented." We have held that such action shall be punished by imposition of damages under section 6673. The Court is mindful of First Amendment rights and cannot, of course, close the doors of the Court to tax protesters. However, those protesters who want to use this Court as their soapbox from which to deliver speeches should pay the toll of $ 500 for the damages they are inflicting on the system and on other taxpayers. We conclude that absent any genuine issues of material fact, respondent is entitled to a decision as a matter of law. Accordingly, respondent's *600 motion for summary judgment is granted. We further conclude that the maximum damages authorized by law ($ 500) are appropriate in this case. An appropriate order and a decision for respondent will be entered. Footnotes
1. All rule references herein are to the Tax Court Rules of Practice and Procedure.↩
2. The difference between the $ 10,237 and the $ 10,212 shown on the statutory notice as the corrected income tax liability is apparently a $ 25 tax credit for a political contribution. In any event, the only item in dispute in this case is the $ 5,119 war tax credit. Respondent has placed this $ 5,119 in a special credit balance account where it remains pending the outcome of this proceeding. If respondent prevails, the credit balance will offset exactly the additional assessment. If petitioners are sustained, the credit balance will be refunded to them. ↩
3. In making our determination in this case, we do not find it necessary to reach the "standing" question, which has been addressed on other occasions by this Court. See Scheide v. Commissioner, 65 T.C. 455 (1975) and Anthony v. Commissioner, 66 T.C. 367↩ (1976).
4. Although petitioners insist that their arguments are different in this case, they are the same basic arguments but set forth in a 27-page brief rather than a six-page brief as before. Petitioners' rhetoric has become more flamboyant, with talk of the danger of "nuclear holocaust," "nuclear insanity," and "paying the Government to commit murders on an unprecedented scale." However, the heart of petitioners' position is the statement that "Writing a check to pay for military costs of the Government is an act that is in violation of our deepest religious convictions." This has been the only issue in both cases.↩
5. Lull v. Commissioner, 602 F. 2d 1166 (4th Cir. 1979), affg. per curiam Lull v. Commissioner and Herby v. Commissioner, Memorandum Opinions of this Court, cert. denied 444 U.S. 1014 (1980); First v. Commissioner, 547 F. 2d 45 (7th Cir. 1976), affg. per curiam a Memorandum Opinion of this Court; Autenrieth v. Cullen, 418 F. 2d 586 (9th Cir. 1969), cert. denied 397 U.S. 1036 (1970); Kalish v. United States, 411 F. 2d 606 (9th Cir. 1969); cert. denied, 396 U.S. 835 (1969); Tingle v. Commissioner, 73 T.C. 816 (1980); Greenberg v. Commissioner, 73 T.C. 806 (1980); Anthony v. Commissioner, 66 T.C. 367 (1976); Scheide v. Commissioner, 65 T.C. 455 (1975); Egnal v. Commissioner, 65 T.C. 255 (1975); Russell v. Commissioner, 60 T.C. 942 (1973); Muste v. Commissioner, 35 T.C. 913 (1961); Farmer v. Rountree, 149 F. Supp. 327 (MD Tenn. 1956); affd. per curiam 252 F. 2d 490 (6th Cir. 1958), cert. denied, 357 U.S. 906↩ (1958).
6. Section 6673 provides that: Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $ 500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.↩