HOWARD B. WAITZKIN AND BARBARA A. WATERMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Waitzkin v. Commissioner
Docket No. 4568-77.
United States Tax Court
T.C. Memo 1981-281; 1981 Tax Ct. Memo LEXIS 461; 42 T.C.M. (CCH) 29; T.C.M. (RIA) 81281; June 9, 1981
Stephen D. Schear, for the petitioners. Catherine L. Wong, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACTS AND OPINION DAWSON, Judge: Respondent determined a deficiency in petitioners' Federal *462 income tax for the year 1975 in the amount of $ 236.36. The only issue presented for decision is whether petitioners are entitled to deduct a portion of their taxes, which they estimated to be used for military purposes, as a "war crimes" deduction on the ground that the tax imposed on them for military purposes constitutes an impermissible interference with their free exercise of religion, which is protected by the First Amendment to the Constitution of the United States. FINDINGS OF FACT None of the facts have been stipulated. The case was tried in San Frncisco, California on January 28, 1981, at which time testimony was taken and exhibits were received in evidence. However B. Waitzkin and Barbara A. Waterman (petitioners) resided in Burlington, Vermont at the time they filed a document which did not comply with the Rules of the Court as to the form and content of a proper petition, and which was not accompanied by the requisite filing fee. They resided in Roxbury, Massachusetts at the time they filed a proper amended petition with the filing fee. In their 1975 Federal income tax return petitioners claimed a "war crimes deduction" in the amount of $ 1,481. An attachment *463 to their return contained the following explanation: War crimes deduction: On April 9, 1973, Howard Waitzkin informed the Internal Revenue Service about allowances claimed on Form W-4 for estimated itemized deductions. On January 13, 1974, Barbara Waterman wrote a similar letter to IRS. In these letters we stated that we were claiming a number of allowances for itemized deductions such that our employers could deduct no or very little taxes as withholding. We stated our unequivocal intention to declare our full incomes and submit no fraudulent claim at any time. The reasons for this decision were as follows (as also stated in our tax returns for 1973 and 1974). We cannot conscientiously pay income taxes which the United States uses for war and related defense purposes. Howard Waitzkin is a conscientious objector and has been so recognized by the Selective Service System. We believe that payment of taxes for defense would violate our conscientious and religious beliefs under the First Amendment. Furthermore, we adhere to the Nuremberg Principles which establish that each citizen bears responsibility for illegal and/or immoral military intervention policies of his/her government; *464 we believe that the United States' continuing military intervention in Indochina, Latin America, Africa, and other parts of the world is both immoral and illegal under international law. Therefore, we are reducing our income tax we pay by 50 percent -- approximately that portion of the country's taxes which are spent on defense or war related activities. Petitioner Howard Waitzkin is a sincerely religious person conscientiously opposed to war in any form. He was granted conscientious objector status by the Selective Service System in 1973. His action in claiming a "war crimes" deduction was motivated by his religious beliefs. He would pay the full amount of his taxes for non-military purposes but believes if he contributes to the military through his taxes, he would be violating his religion. OPINION On brief petitioners assert that their only reason for claiming a "war crimes" deduction is that they cannot pay income taxes which they claim the United States uses for war and related defense purposes, because to do so would violate their conscience and religious beliefs under the First Amendment. Petitioners apparently seek either a decision granting them a religious exemption *465 for that portion of their tax liability corresponding to the percentage of the Federal budget allocable to military purposes, or a decision not granting them any exemption but requiring the Federal government to channel their taxes to non-military purposes. Petitioners do not seek to evade their tax liability. On the contrary, they expressed their willingness to pay their full share of taxes provided no part of it was used for the military. They contend the issue is not the power or authority of the Federal government to arm itself, but rather whether the government can compel them to violate their religious beliefs by using their money for military purposes. Petitioners rely on the recent Supreme Court case of Thomas v. Review Board of the Indiana Employment Security Division,     U.S.    , 49 U.S.L.W. 4341 (April 6, 1981), as authority for their position. The facts of that case are as follows: Thomas, a Jehovah's Witness, was initially employed to work in his employer's roll foundry, which fabricated sheet steel for a variety of industrial uses. When the foundry was closed he was transferred to a department which fabricated turrets for military tanks. *466 Thomas thereafter quit his job, asserting that his religious beliefs prevented him from participating in the production of weapons. He was denied unemployment benefits by the Indiana Review Board. That determination was upheld by the Indiana Supreme Court, which concluded that a termination compelled by religious beliefs was not for "good cause" as required by the state unemployment compensation statute and that denying such benefits created only an indirect burden on Thomas' free exercise of religion, which was justified by legitimate state interests. The Supreme Court of the United States reversed, holding that the state's denial of unemployment compensation benefits violated Thomas's First Amendment right of free exercise of religion under Sherbert v. Verner, 374 U.S. 398 (1963). The Supreme Court said: Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, *467 the infringement upon free exercise is nonetheless substantial. [49 U.S.L.W. at 4344.] Petitioners, who refused to pay that portion of their taxes which they calculate is allocable to military efforts, argue that they have stronger First Amedment claims than that established by Thomas. They contend that (1) Thomas has at least the possibility open to him of finding another job, not related to military purposes, but they are being compelled to violate their religion by forced contributions to a Federal fisc which includes military appropriations. (2) While there is some impact on the state treasury because Indiana must pay unemployment benefits to Thomas, a decision requiring the government to channel petitioners' taxes to non-military purposes would cost the Federal government nothing. (3) An individual's free exercise of religion should not be inhibited by government taxation any more than it should be a threatened loss of government benefits. (4) The government's taxing power is specifically limited by the First Amendment's religion clause. (5) The government has no substantial interest in using a portion of petitioners' taxes for military purposes since monies *468 from other taxpayers could be substituted. (6) A conflict between national security and the First Amendment would arise only if the total sum reserved to non-military purposes by conscientious objectors exceeded the amount of money allocated by Congress for non-military purposes and in view of the historically low numbers of conscientious objectors, this appears to be a practical impossibility. (7) The Government is attempting in this case to coerce, by forced contribution to the military, a symbol of obeisance in violation of petitioners' religious conscience and expressly prohibited in Board of Education v. Barnette, 319 U.S. 624 (1943). Regarding petitioners' contention that this Court would require the Federal government to channel their tax liability to non-military uses, we hold that this is beyond our jurisdiction. The United States Tax Court is a court of limited jurisdiction under the provisions of the Internal Revenue Code. See Section 7442; [1]Tyson v. Commissioner, 66 F.2d 160 (7th Cir. 1933); Johnson v. Commissioner, 19 B.T.A. 840, 847 (1930), affd. 56 F.2d 58 (5th Cir. 1932), cert. denied 286 U.S. 551 (1932). *469 See also Tax Reform Act of 1969, P.L. 91-172, Sections 951-962, 83 Stat. 487, 730. Generally, our jurisdiction is limited to redetermining the correct amount of the tax deficiency. Section 6214. While the deficiency is originally determined pursuant to section 6212 by the Secretary of the Treasury through his delegate, the Commissioner of Internal Revenue, we are without power to order the Secretary of Treasury or the Commissioner to segregate certain tax payments for non-military purposes. There is no enabling statute in the Internal Revenue Code. [2] Nor is there any enabling equitable principle. Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418 (1943). *470 We are left with the issue whether a decision ordering petitioners to pay their deficiency to the U.S. Treasury would violate their First Amendment rights of free exercise of religion. We hold it would not. For more than 20 years, in a long, seemingly unending and undeviating line of cases, this Court and others have disallowed deductions or credits taken by taxpayers for a portion of their taxes which they estimated to be attributable to military expenditures and to which they objected because of their claimed "rights" under the First Amendment, as well as various constitutional provisions and other amendments thereto, the Nuremberg Principles, national and international law, and numerous international agreements and treaties. Greenberg v. Commissioner, 73 T.C. 806, 810-811 (1980); Lull v. Commissioner, 602 F.2d 1166 (4th Cir. 1979), affg. per curiam, T.C. Memo. 1979-74, cert. denied 444 U.S. 1014 (1980); Herby v. Commissioner, T.C. Memo. 1978-119; First v. Commissioner, 547 F.2d 45 (7th Cir. 1976), affg. per curiam T.C. Memo. 1976-36; Pietsch v. President, 434 F.2d 861 (2d Cir. 1970), *471 cert. denied 403 U.S. 920 (1971); Autenrieth v. Cullen, 418 F.2d 586 (9th Cir. 1969), cert. denied 397 U.S. 1036 (1970); Kalish v. United States, 411 F.2d 606 (9th Cir. 1969), cert. denied 396 U.S. 835 (1969); Farmer v. Rountree, 149 F. Supp. 327 (M.D. Tenn. 1956), affd. per curiam 252 F.2d 490 (6th Cir. 1958), cert. denied 357 U.S. 906 (1958); Anthony v. Commissioner, 66 T.C. 367 (1976); Scheide v. Commissioner, 65 T.C. 455 (1975); Egnal v. Commissioner, 65 T.C. 255 (1975); Russell v. Commissioner, 60 T.C. 942 (1973); Muste v. Commissioner, 35 T.C. 913 (1961). Petitioners misplace their reliance on Thomas v. Review Board, supra. The Supreme Court stated therein: The mere fact that the petitioner's religious practice is burdened by a government program does not mean that an exemption accommodating his practice must be granted. The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state *472 interest. [43 U.S.L.W. at 4344.] There is a clear distinction between the imposition of a general income tax upon the citizenry and the denial of unemployment benefits to a specific individual who cannot, according to the precepts of his religion, work in the manufacturing of military arms. As the Ninth Circuit explained in Autenrieth v. Cullen, 418 F.2d at 588-589: The Income Tax Act does not "aid one religion, aid all religions, or prefer one religion over another." Nor does it punish anyone "for entertaining or professing religious beliefs or disbeliefs." (Mr. Justice Black, in Everson v. Board of Education, 1947, 330 U.S. 1 15-16, 67 S.Ct. 504, 91 L.Ed. 711.) It taxes plaintiffs like all others, because they are citizens or residents who have taxable income. On matters religious, it is neutral. If every citizen could refuse to pay all or part of his taxes because he disapproved of the government's use of the money, on religious grounds, the ability of the government to function could be impaired or even destroyed. See, for example, Crowe v. Commissioner of Internal Revenue, 8 Cir., 1968, 396 F.2d 766, where a taxpayer *473 declined to pay his income tax because he objected to being made "to contribute to the welfare of people who made no effort to support themselves." There are few, if any, governmental activities to which some person or group might not object on religious grounds. Plaintiffs cite no case, and we know of none, that goes as far as they wish us to go. In Murdock v. Pennsylvania, 1943, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, there was a tax upon the sale of literature, including religious literature. Thus the tax was, in part, a tax upon a religious activity. The income tax is not such a tax. The Supreme Court distinguished the income tax in that case (p. 112). See also Follett v. Town of McCormick, 1944, 321 U.S. 573, 577-578, 64 S.Ct. 717, 88 L.Ed. 938. Although we realize the sincerity of petitioners' beliefs, this Court is not a "forum for protest" for a taxpayer's objections to this country's military appropriations. Tingle v. Commissioner, 73 T.C. 816, 822 (1980), appeal dismissed (3d Cir., Sept. 17, 1980). Within the bounds of Flast v. Cohen, 392 U.S. 83 (1968), general grievances against the military policies *474 of the Government are not the types of controversies to be resolved by the courts in tax litigation.[3] Congress is the appropriate body to which such matters should be referred. [4]
To reflect the concessions of the parties and our conclusion on the disputed issue, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue. ↩
2. There have been a number of legislative attempts to amend the Internal Revenue Code of 1954 to provide that a taxpayer conscientiously opposed to participation in war may elect to have his income, estate, or gift tax payments spent for nonmilitary purposes but none has become law. See, e.g., S. 980, 97th Cong., 1st Sess. (1981); S. 880, 96th Cong., 1st Sess. (1979); H.R. 4897, 96th Cong., 1st Sess. (1979); Remarks of Senator Hatfield, April 7, 1981, 127 Cong. Rec. S. 3478 (1981) and April 4, 1979, 125 Cong. Rec. S. 3912 (1979); Remarks of Representative Dellums, Sept. 11, 1979, 125 Cong. Rec. H. 7705 (1979).↩
3. As a procedural matter, we note that petitioners have based their refusal to pay 50 percent of their tax liability on their own calculation that 50 percent of the Federal budget is spent for military purposes. There is nothing in the record of this case to show the exact percentage of the Federal budget devoted to such purposes. Moreover, there is nothing in this record to indicate exactly how the dollars petitioners pay into the United States Treasury are disbursed. We are reluctant to conclude under such circumstances that petitioners' tax deficiency dollars would necessarily be spent on military purposes according to some general averaging formula derived from the Federal budget.↩
4. See Footnote 2, page 7.↩