MARION E. and GLADYS G. HUTSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hutson v. Commissioner
Docket No. 5386-77
United States Tax Court
T.C. Memo 1979-438; 1979 Tax Ct. Memo LEXIS 87; 39 T.C.M. (CCH) 415; T.C.M. (RIA) 79438; October 31, 1979, Filed Marion E. Hutson, pro se. Stephen Friedberg, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $1,021.51 in petitioners' Federal income tax for the taxable year 1974. Respondent has also assessed additions to tax of $594.88 and $958.76 for the years 1973 and 1974, respectively, under the civil fraud provision, section 6653(b). [1] The issues remaining for our decision are: (1) Whether petitioners *89 received payment from an insurance company in excess of the basis of certain stolen items, resulting in taxable income to them; (2) Whether petitioners are entitled to a sales tax deduction in addition to the amount allowed by the sales tax tables because of a theft payment by their insurance company; (3) Whether petitioners are entitled to take a casualty loss deduction in 1974 for a separate theft occurring in December of that year, when the final decision on their claim was not made until the following tax year, and (4) Whether any part of the underpayment of tax for the years 1973 and 1974 is due to fraud. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Marion E. Hutson and Gladys G. Hutson (hereinafter referred to as petitioners) filed joint Federal income tax returns for the years 1973 and 1974 with the Internal Revenue Service Center in Memphis, Tennessee. At the time of the commencement of this case, petitioners were residents of Portsmouth, Virginia. As a result of an audit of petitioners' income tax return for the year 1973, respondent disallowed medical *90 deductions in the amount of $4,168 and charitable contributions in the amount of $1,349. Petitioners were unable to substantiate these deductions, and in 1976, petitioner Marion Hutson agreed to an additional tax of $1,189.75 for the year 1973 to reflect these adjustments. As a result of an audit of petitioners' income tax returns for the year 1974, respondent disallowed medical deductions in the amount of $2,459, charitable contributions in the amopunt of $1,500, interest deductions in the amount of $77, and a claimed casualty loss of $1,404. In 1976, petitioner Marion Hutson agreed to an additional tax of $896.01, for the year 1974 to reflect these adjustments. Subsequently, petitioner changed his mind with respect to the disallowed casualty loss deduction only, and at trial, he contested the denial of the claimed casualty loss of $1,404. On April 18, 1974, petitioners' house was broken into and burglarized. Some of the property claimed to have been stolen were items which had originally belonged to petitioner Marion Hutson's stepfather. These items were given to petitioner Marion Hutson by his mother after the death of her husband. Petitioner Marion Hutson filed a police *91 report of the burglary on the day the theft occurred with the Division of Police, Portsmouth, Virginia. In addition, petitioners filed a claim with Allstate Insurance Company (hereinafter referred to as Allstate) for losses due to the theft. Allstate paid the claim in June of 1974 with a check in the amount of $4,446.36 and property in kind which cost $663.94. Subsequent to the payment, it was discovered that 15 of the checks submitted to Allstate by petitioner Marion Hutson to substantiate his losses had been altered. Petitioner Marion Hutson admits that he altered the 15 checks. The original amount for which these checks were written and cashed totalled $287.73. The amount as altered and submitted to Allstate totalled $5,097.73. Petitioner Marion Hutson was charged with fraud by the Commonwealth Attorney's Office, but the case was dismissed at trial. Allstate has not attempted to recover any of the money paid to petitioners for their theft claim of April 18, 1974. Petitioners took a sales tax deduction in 1974 of $177 and stated on their return that such amount was a "state sales tax on replacement of $4,436 worth of items stolen in break in." Petitioners purchased four *92 $1,000 savings certificates with the funds received from Allstate. Petitioners did not purchase in 1974 items to replace all of the items claimed to have been stolen in 1974. Among the items replaced in kind by Allstate was a Minolta camera which petitioner Marion Hutson subsequently sold. On December 26, 1974, another burglary occurred at petitioners' house while they were visiting relatives in Florida. The burglary was discovered by petitioner Gladys Hutson's mother, who reported the burglary to the Portsmouth Police Department. Petitioners lost $1,404 worth of property from the robbery. [2] A claim for this amount was submitted to Allstate. The claim relating to the December 1974 theft loss was denied by Allstate in 1975. OPINION This case involves several issues pertaining to petitioners' income tax liability for the year 1974 and an assessed fraud penalty for the years 1973 and 1974. Issue 1: Gross Income Derived from Insurance Proceeds
On April 18, 1974, petitioners suffered a theft at their residence. The house *93 itself was not entered, but the thief forced open a window to the attached garage. Petitioner Marion Hutson filed a police report on the same day, listing the items taken which he could ascertain at that time. Missing items included tools, a camera and lenses, and a great deal of fishing and sporting gear. When petitioner Marion Hutson filed a claim with his insurance company for the stolen property, he was told by the Allstate agent that he must have a receipt or a cancelled check for each item in order to obtain reimbursement. Unable to find all of the needed documentation and fearful that he would not be reimbursed for his losses, petitioner Marion Hutson altered 15 checks and submitted them to Allstate as proof of purchase. He did this by taking old cashed checks that had been written for a small amount, and had space on the left side of the lines where the arabic symbol and the written number are recorded. Thus by inserting the words "Two hundred" and the symbol "2" on the left side of the appropriate lines, he was able to turn a $20 check originally made out to Sears, into a $220 check. Allstate discovered the alteration after it had reimbursed petitioners with money and *94 property in kind totalling $5,110.30. Petitioner Marion Hutson was prosecuted criminally, but the case was dismissed at trial. Allstate has not attempted to recover any of the money it paid petitioners for their claim. Respondent argues that petitioners received income under section 61[3] for the excess of the reimbursement from Allstate over their basis in the stolen property, which would be the lesser of cost or fair market value. Petitioners contend that their basis in the items stolen was greater than the reimbursement from Allstate, and that they have met their burden of proof with regard to verification of the basis. We agree with respondent that petitioners received income under section 61[4] due to their failure to provide proof of the lower of their basis in the stolen items or the fair market value, but we disagree with respondent's computation of such income. *95 Section 61 very broadly defines gross income as "all income from Whatever source derived." Any accession to wealth which is clearly realized is taxable, regardless of its source. Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). In the case at hand, petitioners suffered a theft loss. If they had not received any compensation for the stolen items, petitioners would have been entitled to deduct their losses under section 165(a)[5] to the extent that the losses $100exceeded. See section 165(c)(3). The amount of loss in this case is measured by the fair market value of the stolen items or their adjusted basis, whichever is less. See secs. 1.165-7(b) and 1.165-8(c), Income Tax Regs. If compensated for their losses by insurance, normally petitioners would be entitled neither to a deduction under section 165, nor would they realize income under section 61. However, because the reimbursement from Allstate was based on fraudulent verification of the cost of the property, respondent *96 asserts, and we agree, that the excess of the reimbursement over the lower of petitioners' basis in the stolen property or its fair market value represents income taxable under section 61. With regard to this issue, petitioners have the burden of proving that their basis in the stolen property or its fair market value (if lower) is at least as great as the insurance reimbursement and that therefore they realized no taxable income from the proceeds. Rule 142, Tax Court Rules of Practice and Procedure.
Respondent contends that the amount of taxable income is $4,810, which is the difference between the altered checks as submitted to Allstate, $5,097.73, and the amount for which the checks were originally cashed, $287.73. While we agree with respondent on his theory of the taxability of the insurance proceeds, we disagree with the figures he has used in his computation. The correct measure *97 of the additional income is the excess of the reimbursement from Allstate over the lower of petitioners' basis in the stolen property, or its fair market value. Reimbursement from Allstate included a check for $4,446.36 and property in kind valued at $663.94. Therefore, on the record before us, the excess of the total reimbursement, or $5,110.30, over petitioners' basis in the property represents income to petitioners. [6]
Respondent used the original amount for which the checks were cashed, $287.73, as the basis of the stolen property. However, this figure is clearly in error.Petitioner Marion Hutson admits that the altered checks had no connection with the items which were stolen. Rather, petitioner Marion Hutson took checks that he had already written to pay for unrelated items, altered them to show a larger face amount, and submitted them as proof of purchase of the stolen property. However, because the original checks admittedly were unrelated to the stolen items, it is erroneous *98 to use that figure in computing the basis of the stolen property. Petitioners have not met their burden of proof with regard to the basis of each of the stolen items. They have submitted neither receipts which would show cost, nor an independent appraisal which would show fair market value. However, a witness testified on petitioners' behalf that petitioner Marion Hutson was an expert fisherman who entered and had won many sporting tournaments of various kinds. The witness testified about the equipment needed for the tournaments, as well as his personal knowledge of some of the property petitioner Marion Hutson owned, including many fishing rods and reels, and a 35-millimeter camera. In addition, a notarized statement by petitioner Marion Hutson's mother-inlaw, Mrs. Loretta George, was admitted in evidence. Mrs. George stated that while petitioners were building their home, they lived with her, and that among the possessions they stored at her house was a large amount of fishing equipment. Mrs. George estimated that petitioner Marion Hutson owned at least 25 fishing rods at that time, and that upon completion of petitioners' new home, the rods were hung on both sides of the *99 garage walls. It is undisputed that petitioners' garage was broken into and burglarized on April 18, 1974. Most significantly, we have a police report written on the same day the theft occurred and before petitioner Marion Hutson talked to his Allstate agent, enumerating items stolen from the garage. Many of these items are listed again on a search warrant which was issued after a police informant had been approached by and taken to the home of one "Benson" to look over some stolen fishing gear in anticipation of a sale. On the basis of the entire record before us, and placing particular emphasis on the police report, we conclude that the basis of the items stolen from petitioners on April 18, 1974 totalled approximately $1,750. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Therefore, the amount of income properly attributable to petitioners for the insurance proceeds is $3,360.30, the difference between the reimbursement from Allstate of $5,110.30 and petitioners' adjusted basis in the property of $1,750. Issue 2: Sales Tax Deduction
Petitioners took a sales tax deduction of $177 for the year 1974, and noted on their return that such deduction was *100 a "state sales tax on replacement of $4,436 worth of items stolen in break in." Petitioners did not purchase replacements for all of the stolen property in 1974. Rather, they purchased four $1,000 savings certificates with the reimbursement funds received from Allstate. Respondent argues that a sales tax deduction is not allowable in 1974 because it is clear that petitioners did not purchase goods with the insurance reimbursement, but instead, put the money in savings. Petitioners appear to argue that they are entitled to a deduction for the sales tax of the items stolen in 1974 because the tax was not included in the original cost of the items, i.e., the basis. We agree with respondent. The law is clear that the deduction for sales tax under section 164(a)[7] for cash method taxpayers is the year in which such tax was actually paid. See sec. 1.164-1(a), Income Tax Regs. Petitioners have already benefitted from deduction in the years they purchased the stolen property either through use of the tax tables or a separately stated deduction. Since petitioners *101 admittedly put the insurance reimbursement in savings rather than using it to purchase other goods in 1974, they are not entitled to a sales tax deduction of $177. Issue 3: December Casualty Loss
On December 26, 1974, petitioners suffered another break-in at their residence, and incurred a theft loss of $1,404. They submitted a claim to their insurance company, Allstate, following the break-in. Allstate denied the claim in 1975. Petitioners argue that they should be allowed to deduct $1,404 as a casualty loss in 1974 because the theft occurred that year. Respondent argues that the loss may not be deducted in 1974 because it was not clear at the close of 1974 whether petitioners' claim for reimbursement would be granted or denied. We agree with respondent. Section 1.165-1(d) of the Income Tax Regulations *102 clearly states the hornbook rule that if a claim for reimbursement exists with regard to a casualty loss, no deduction may be taken for such loss until it can be ascertained with reasonable certainty whether or not the reimbursement will be received by the taxpayer. Petitioners did not suffer the theft loss until December 26, 1974. The claim was not denied until 1975. Therefore, at the close of 1974, it was unknown whether petitioners would be reimbursed for the theft loss. Accordingly, petitioners are not entitled to deduct the $1,404 casualty loss in 1974. Issue 4: Fraud
The last issue in this ase concerns an assessed addition to tax for the years 1973 and 1974 under section 6653(b)[8], the civil fraud provision.Respondent has asserted the penalty primarily because petitioners took large medical deductions and charitable contributions for those years and upon a tax audit, were unable to substantiate them. The adjustments to the medical deductions and charitable contributions are not in dispute. *103 Respondent argues vigorously that petitioners fraudulently took the deductions, knowing them to be fictitious, with a plan in mind to alter the checks should a tax audit ensue.Petitioners contend that the evidence pertaining to fraud is sheer speculation, that there was neither a plan nor an intent to defraud the Internal Revenue Service, and that respondent has not met his burden of proof with regard to the fraud penalty. We agree with petitioners. Respondent has the burden of proof with regard to the issue of fraud. Section 7454(a). Unlike ordinary civil tax proceedings, the assessment of a fraud penalty by the Commissioner never enjoys the presumption of correctness. Rather, respondent bears the burden of proving fraud by clear and convincing evidence. Archer v. Commissioner,227 F.2d 270 (5th Cir. 1955), affg. a Memorandum Opinion of this Court; Shaw v. Commissioner,27 T.C. 561 (1956), aff'd. 252 F.2d 681 (6th Cir. 1958). An essential element, *104 the very heart of the fraud issue, is an intent to defraud the Government. Muste v. Commissioner,35 T.C. 913 (1961); Iley v. Commissioner,19 T.C. 631 (1952). We are satisfied that respondent has not met his burden of proving fraud on the part of petitioners. Petitioners never submitted any altered checks to the Internal Revenue Service in an attempt to substantiate the challenged medical deductions or charitable contributions. Mere lack of documentary verification is not tantamount to an intent to defraud the Government, and without more probative evidence on the issue, will not sustain an assessment of the fraud penalty in this case. Although respondent concedes that there was no actual attempt to submit false documentation to verify the deductions, he contends nonetheless that petitioners knew the deductions to be false at the time they filed their 1973 and 1974 returns, and planned at that time to submit altered checks to the Internal Revenue Service in the case of a tax audit. Respondent points to the manner in which petitioner Marion Hutson wrote checks so as to allow alternation after the checks were cashed. Respondent reasons that *105 petitioner Marion Hutson abandoned his plan only after learning that his method of alteration was detectable at the trial resulting from his submission of altered checks to Allstate. Respondent also points to a sales tax deduction taken in 1974 for replacement of certain stolen property, when in fact replacement items were not purchase that year, and the submission to the Internal Revenue Service of a document to prove ownership of an item for a casualty loss, when in fact such document was printed after the loss was incurred, to show fraudulent intent. We must reject respondent's position because his theory, however intriguing, is based on little more than speculation and hypothesis. The fact is that petitioners never submitted altered checks to the Internal Revenue Service. While petitioner Marion Hutson's open admission that he altered checks tendered to Allstate to prove a casualty loss is significant, we must bear in mind that those events concerned a different entity and different circumstances than that which is before this court. Furthermore, the charge for fraud which was brought against petitioner Marion Hutson because of the incident with Allstate was dismissed at *106 trial. Petitioner Marion Hutson testified at trial that his method of writing checks was simply " a mannerism," and that when he wrote a check for a small amount, he frequently started the words and numbers in the middle of the lines, regardless of to whom they were tendered. After a careful consideration of the voluminous bank records submitted by the parties, we are satisfied that petitioner Marion Hutson frequently wrote checks in this manner for both tac deductible and non-tax deductible items. Nothing in the record clearly and convincingly shows fraudulent intent on the part of petitioners. Therefore, respondent has failed to meet his burden of proof on the fraud assessment. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. That petitioners lost property worth $1,404 in the December break-in is stipulated for the purposes of this case, and this case alone.↩
3. Sec. 61 provides in pertinent part: SEC. 61. GROSS INCOME DEFINED. (a) GENERAL DEFINITION.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *. ↩
4. Respondent uses an involuntary conversion theory to tax the insurance proceeds. Although the taxation of gain from an involuntary conversion of capital assets would generally come under sec. 1231, we are satisfied with the use of sec. 61↩ in the case at hand, since petitioners have not made any allegations as to the capital nature or the holding period of their stolen property.
5. Sec. 165(a) provides: SEC. 165. LOSSES. (a) GENERAL RULE.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.↩
6. Petitioner introduced no significant or reliable evidence as to the current fair market value of the items involved, so his basis in the items is the appropriate bench mark for this proceeding.↩
7. Sec. 164(a) provides in pertinent part: SEC. 164. TAXES. (a) GENERAL RULE.--Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: * * *
(4) State and local general sales taxes.↩
8. Sec. 6653(b) provides: SEC. 6653. FAILURE TO PAY TAX. * * *
(b) FRAUD.--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.↩