RICHARD E. McMULLEN AND DIANE M. McMULLEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McMullen v. Commissioner
Docket No. 8559-80.
United States Tax Court
T.C. Memo 1981-664; 1981 Tax Ct. Memo LEXIS 84; 42 T.C.M. (CCH) 1682; T.C.M. (RIA) 81664; November 16, 1981. *85 Richard E. McMullen, pro se. Francis J. Emmons, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax: Addition to Tax
Year
Deficiency
Sec. 6653(b) [1]
1975
$ 826.20
$ 947.96
1976
2,508.00
1,254.00
1977
3,426.34
1,713.17
For the year 1975 the deficiency was determined against the petitioners jointly since they filed a delinquent joint Federal income tax return for that year. The deficiencies in income tax for the years 1976 and 1977, and the additions to tax under section 6653(b) for all three years, were determined against petitioner Richard E. McMullen individually. No Federal income tax returns have been filed for 1976 and 1977 by either petitioner. In his answer respondent alleged, in the alternative, that if the Court should decide that petitioner Richard E. McMullen is not liable for the additions to tax under section 6653(b) for *86 any of the years at issue, then the petitioner is liable for the additions to tax for delinquency and for negligence for such years under the provisions of sections 6651(a)(1) and 6653(a), respectively. The parties have stipulated to petitioners' joint taxable income for 1975 and to petitioner Richard E. McMullen's taxable income for 1976 and 1977. The concessions of the parties with respect to the corrected taxable income for these years can be given effect in the Rule 155 computations. At issue is whether any part of the underpayment of income tax for each of the years 1975, 1976 and 1977 was due to fraud with intent to evade tax on the part of petitioner Richard E. McMullen. FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. Richard E. McMullen and Diane M. McMullen (petitioners) are husband and wife who resided in Hillsdale, Illinois, when they filed their petition in this case. They filed a joint Federal income tax return for the year 1975 with the Kansas City Service Center, Kansas City, Missouri, on April 22, 1977. Neither petitioner has filed a Federal income tax return for 1976 or 1977, nor has either requested an extension of time *87 for the filing of returns for these two years. Petitioners' corrected joint taxable income for the year 1975 and petitioner Richard E. McMullen's corrected taxable income for the years 1976 and 1977 are as follows: 1975
1976
1977
Income: Wages & Salary - Paid to
Richard E. McMullen by
John Deere
$ 17,530.69
$ 16,848.06
$ 21,823.60
Deductions: Taxes: Real Estate
511.06
625.00
255.00
State Inc. Tax
3.60
0
0
Sales Tax
317.00
305.00
359.34
Gasoline Tax
115.00
96.00
67.00
Interest: Home Mortgage
1,321.31
2,164.42
2,755.36
Auto Loan
85.00
102.00
66.00
Beneficial Finc.
91.04
28.36
Thorp Credit
117.90
365.00
Deere Credit
1.06
Sears
11.78
Charitable Contr.
180.00
135.00
185.50
Miscellaneous: Union Dues
174.79
172.00
200.00
Safety Shoes
38.00
Tools
63.00
Personal Exemptions
3,750.00
3,750.00
3,750.00
Total Deductions
6,768.76
7,742.78
7,649.98
Corrected Taxable Income
$ 10,761.93
$ 9,105.28
$ 14,173.62
During the years 1975, 1976 and 1977, Richard E. McMullen (hereinafter referred to as petitioner) was employed by John Deere Harvester Works (hereinafter John Deere) in East Moline, Illinois, *88 as a machine hand. He has worked for John Deere continuously since 1967. He is a high school graduate. During each of the years 1972 through 1974, and 1975 through 1977, petitioner received a Form W-2 from John Deere in either January or February of the year immediately subsequent to the year to which the respective Form W-2 related. Petitioner filed timely joint Federal income tax returns for himself and his wife for each of the years 1972, 1973 and 1974. He prepared his and his wife's 1972 and 1974 joint Federal income tax returns, and he retained a professional return preparer to prepare his 1973 joint Federal income tax return. Each of these returns indicated that a refund was due to petitioner and his wife. For each of these years the petitioner also filed an Illinois state income tax return. During 1972, 1973 and 1974, and in subsequent years, petitioner was aware of the due dates for his Federal and state income tax returns and of the types of expenditures which qualify as itemized deductions. On February 16, 1973, and on July 31, 1974, petitioner submitted two separate Forms W-4 (Employee's Withholding Exemption Certificate) to John Deere on forms which Deere *89 provided which indicated that he was entitled to no withholding allowances and four withholding allowances, respectively. On November 6, 1974, petitioner submitted a Form W-4 to John Deere claiming a total of 29 withholding allowances. At the time he submitted this form he realized that the number of allowances claimed thereon would prevent any Federal income taxes from being withheld from his salary. The form used by petitioner was not the type of form used by John Deere for this purpose. When petitioner submitted his Form W-4 to the John Deere payroll clerk, Mildred Malioch, on November 6, 1974, he stated that he had been advised by his "attorney" that he could claim 29 withholding allowances on his return. However, at trial petitioner admitted that he submitted this form on his own, without advice from anyone. On November 6, 1974, Dean Harris, the payroll supervisor at John Deere, requested that petitioner fill out a new Form W-4 on a company supplied form rather than the type of form which he had originally submitted. Petitioner refused to do so. On December 4, 1974, petitioner attended a meeting to discuss the Form W-4 which he had filed. The meeting was attended *90 by Tom Norman, John Deere's Industrial Relations Representative, Crotis Teague, the union representative, and C.A. Kress, the Manager of Industrial Relations. At that time the petitioner was advised that he might be found in violation of Federal law if the Form W-4 which he had filed on November 6, 1974, was found to be inaccurate. As a result of the submission of the Form W-4 on November 6, 1974, petitioner's take-home pay at John Deere increased by 15 to 20 percent. Petitioner knew that his pay substantially exceeded the pay of his fellow workers. The additional pay which he received was used by him for personal purposes. Sometime during December 1974, petitioner invited Peter Taylor from Milwaukee, Wisconsin, to speak to a group of about 12 people (six families) on the subject of "family trusts." Of the individuals who attended this meeting only petitioner agreed to implement Mr. Taylor's plan. On May 17, 1975, petitioner wrote a letter to the John Deere payroll supervisor requesting that all of his future payroll checks be made payable to the "family trust" which he had established. In the letter he assured the Deere officials that he would take care of his own tax *91 liabilities. Transmitted with his letter were various newspaper clippings and a copy of the "trust" declaration. Petitioner told the Deere officials that they were not to give copies of the "trust" documents to the Internal Revenue Service. On May 28, 1975, the Comptroller of John Deere wrote petitioner a letter advising him that Deere would not make his wage payments directly to the "family trust" as he had requested. Petitioner's request that the wage payments be made directly to his trust was done entirely on his own without advice from anyone. He did not believe that John Deere would honor his request at the time he made it and therefore did not protest their refusal to do so. On June 10, 1975, John Deere issued a letter to all of its employees advising them of the possible criminal consequences which might result from the filing of a false Form W-4. Dean Harris, the payroll supervisor at John Deere, personally delivered a copy of this letter to petitioner on June 12, 1975, and was present when petitioner read it. At that time the petitioner expressed some uncertainty as to whether he should file a new Form W-4 for fear that it would be used against him. However, he *92 stated that he would return within a few days to advise Mr. Harris of his decision. He did not ever return to discuss this matter with Mr. Harris. Sometime during the fall of 1975 the petitioners' 1973 and 1974 Federal income tax returns were selected for examination by the Internal Revenue Service. On January 5, 1976, petitioner sent a letter to various third parties requesting information to substantiate the deductions claimed on his 1973 and 1974 Federal tax returns. In the letter he expressed displeasure with the audit process, and described the Internal Revenue Service as "GESTAPO B*ST*RDS." On February 6, 1976, petitioner filed what purported to be "amended" Federal income tax returns for the years 1973 and 1974 with the Internal Revenue Service. On these returns he advanced the theory that Federal Reserve notes were worth only one-fifth of their stated value in "real dollars" and therefore divided all of the income and expenses (except for the personal exemptions indicated on the return) by five. As a result of this computation he indicated that no taxes were owed for either 1973 or 1974, and claimed a full refund of the income taxes which had been withheld from his *93 salary for those two years. The refunds were requested in Federal Reserve Notes. In April 1976, petitioner sold his residence in Silvis, Illinois, for which he accepted a cashier's check from the purchaser. Throughout the years 1975, 1976 and 1977, petitioner would use Federal Reserve Notes and checks to satisfy his personal obligations for such items as food, house payments, car payments and real estate taxes. On February 10, 1977, petitioner was contacted by Special Agent Ronald Nimmer of the Criminal Investigation Division of the Internal Revenue Service. At the meeting petitioner received his constitutional warnings and was advised that his 1974 and 1975 tax liabilities were currently under investigation by Mr. Nimmer. Petitioner declined to discuss his tax affairs at that time and requested that they meet at a later date so that he could have either an attorney or another witness present. On February 22, 1977, petitioner and an unidentified male companion came to Mr. Nimmer's office to discuss the investigation into petitioner's tax liabilities. Petitioner attempted to tape record the meeting but, because of his association with various tax protest organizations, *94 Mr. Nimmer refused to permit him to do so. Petitioner was advised at the meeting that Mr. Nimmer was investigating allegations that he had willfully failed to timely file his 1975 income tax return in violation of section 7203, and that he had submitted a materially false Form W-4 to his employer in violation of section 7205. When asked if he had in fact filed for 1975, petitioner refused to answer on Fifth Amendment grounds. When asked if he had submitted a Form W-4 to his employer claiming 29 withholding allowances, petitioner again invoked his Fifth Amendment privilege. At the conclusion of the meetng Mr. Nimmer requested that petitioner provide any documents which would support his position, and petitioner agreed to do so. On March 23, 1977, petitioner wrote Mr. Nimmer a letter advising him that he was encountering difficulty in obtaining the data which he had agreed to provide to the special agent. As a result of his discussions and correspondence with petitioner, Mr. Nimmer had been led to believe that petitioner would provide him with documents to support his position with respect to the charges which Mr. Nimmer was investigating. However, petitioner never provided Mr. *95 Nimmer with any such information. On April 20, 1977, petitioner filed two documents purporting to be Fiduciary income tax returns (Form 1041) for 1975 on behalf of the "family trusts" which had been established for him by Peter Taylor. On April 22, 1977, petitioner and his wife filed a joint Federal income tax return (Form 1040) for the year 1975. This return was also prepared by Peter Taylor. No request for an extension of time for the filing of petitioner's 1975 individual income tax return was made. On April 24, 1977, petitioner wrote Mr. Nimmer a letter advising him that he had filed for 1975. In the letter he indicated for the first time that he had established certain "trusts," and alleged that his reason for delinquently filing for that year was because of his difficulty in finding someone to prepare his 1975 trust returns. In the same letter he also accused Mr. Nimmer of violating the summons notification procedures recently enacted as a part of the Tax Reform Act of 1976, and accused him of various criminal violations and other improprieties in the manner in which he conducted his investigation. Petitioner indicated in the letter that he would not met with Mr. *96 Nimmer to discuss the case as he had previously agreed. On May 3, 1977, Mr. Nimmer met with Peter Taylor in Milwaukee, Wisconsin. During the meeting Mr. Taylor stated that he had been retained by petitioner in early 1975 to prepare the trust returns. Mr. Taylor also stated that he did not advise petitioner to file a Form W-4 with his employer increasing the number of withholding allowances, nor did he advise petitioner to request that John Deere make petitioner's wage payments directly to the "family trusts." On May 3, 1977, Mr. Taylor wrote petitioner a letter advising him that he had been contacted by Mr. Nimmer, and stating that he had cooperated with the agent to the best of his ability. Mr. Taylor also advised petitioner that he should be certain to take the necessary steps to have his 1976 return prepared as soon as possible. On May 10, 1977, petitioner wrote Mr. Nimmer a letter complaining of the fact that Mr. Taylor had surrendered records to the agent, and he again accused the agent of various improprieties in the manner in which he was conducting his investigation. On September 2, 1977, petitioner filed what purported to be an amended Federal income tax return *97 (Form 1040X) concerning the years 1969 through 1976, inclusive. On this return he claimed that Federal Reserve Notes were not lawful money and demanded a refund of all taxes paid, plus interest thereon, for such years. On November 3, 1977, petitioner was charged by criminal information as follows: That on or about the 6th day of November, 1974, in the Northern Division of the Southern District of Illinois, and within the jurisdiction of this Court, RICHARD E. MC MULLEN, a resident of Rock Island County in the Northern Division of the Southern District of Illinois, who, during the calendar year 1974 was employed by John Deere Harvester Works, 1100 13th Avenue, East Moline, Illinois, and who was required under the Internal Revenue laws to furnish John Deere Harvester Works with a signed Withholding Exemption Certificate relating to the number of withholding exemptions claimed on or about the date of commencement of employment by John Deere Harvester Works, did willfully supply a false and fraudulent statement to John Deere Harvester Works, on which he claimed twenty-nine (29) withholding exemptions, whereas, as he then and there well knew, he was entitled to claim only seven *98 (7) withholding exemptions; in violation of Section 7205, Internal Revenue Code; Title 26, Section 7205, United States Code. On February 2, 1978, petitioner entered a plea of guilty to the charge. A judgment of conviction was entered against petitioner based upon his guilty plea, and he was sentenced on April 25, 1978, to three years probation with the special condition that he comply with state and Federal tax laws. Petitioner's conviction has become final. Petitioner corrected his Form W-4 at John Deere to reflect his proper number of withholding allowances sometime around April 1978. Petitioner has not filed any individual Federal income tax returns for either 1976 or 1977. Nor has he requested any extensions of time for filing these returns. Petitioner has not filed any returns on behalf of his "family trusts" for either 1976 or 1977. Petitioner willfully failed to timely file his 1975, 1976 and 1977 individual income tax returns on or before their due dates. Petitioner's delinquent filing of a 1975 individual Federal income tax return was motivated by his desire to avoid prosecution under section 7203 as a result of Special Agent Nimmer's *99 investigation of his failure to timely time for that year. Petitioner knowingly submitted a false and fraudulent Form W-4 to John Deere on November 6, 1974, with the specific intent to avoid the payment of taxes which he knew were lawfully owing. Petitioner attempted to thwart Special Agent Nimmer's investigation of allegations that he had willfully failed to file his 1975 Federal income tax return and that he had submitted a false and fraudulent Form W-4 to his employer by refusing to answer the agent's questions, by feigning cooperation with the agent when in fact he did not intend to offer any such cooperation, and by threatening to have the agent prosecuted for supposed violations of petitioner's rights. Petitioner did not possess a good faith belief either in the validity of his "family trusts" or in the theories advanced in the numerous "protest returns" which he filed during the years in issue. ULTIMATE FINDINGS OF FACT 1. Petitioner's failure to file Federal income tax returns for 1976 and 1977 and to report his correct taxable income thereon was due to fraud with intent to evade tax. 2. Petitioner fraudulently and with intent to evade tax submitted false *100 forms W-4 to his employer, John Deere. 3. The underpayments of income tax for each of the years 1975, 1976 and 1977 were due to petitioner's fraud. OPINION As previously indicated, the parties have stipulated that the correct taxable income of petitioners for the year 1975 was $ 10,761.93 and that petitioner Richard E. McMullen had taxable income of $ 9,105.28 in 1976 and $ 14,173.62 in 1977. The gross income consisted of wages received from John Deere which was erroneously reported on an untimely return filed for 1975 and unreported for 1976 and 1977. Therefore, the principal issue presented in this case is whether the petitioner-husband is liable for the section 6653(b) additions to tax for fraud. The burden of proving fraud is on the respondent, and he must carry his burden by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. He must show that the taxpayer intended to evade taxes which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); *101 Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner, 26 T.C. 107, 112-113 (1956). The presence or absence of fraud is a factual question to be determined upon consideration of the entire record. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962), cert. denied 379 U.S. 827 (1964); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Since fraud can seldom be established by direct proof of intention, the taxpayer's entire course of conduct is often relied on to establish circumstantially such fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. We hold on this record that respondent has proved fraud by clear and convincing evidence. Failure to file returns does not in itself establish fraud. However, such failure may properly be considered in connection with other facts in determining whether any underpayment of tax is due to fraud. Beaver v. Commissioner, 55 T.C. 85 (1970); *102 Bennett v. Commissioner, 30 T.C. 114 (1958). An extended pattern of nonfiling and late filing, plus some "convincing affirmative indication" of the requisite specific intent to defraud, warrants imposition of the addition to tax for fraud. Stoltzfus v. United States, supra at 1005. Here the indicia of fraud are abundant. Petitioner was well aware of his obligation to file returns and that taxes were due for each of the years 1975 through 1977. He is a knowledgeable person. He had filed Federal income tax returns for previous years. He earned substantial income which required him to file returns. He had previously prepared income tax returns for himself and his wife. He had received Form W-2 from John Deere setting forth his wages. First, petitioner willfully failed to file returns for 1976 and 1977, and he filed for 1975 only after he was advised that he was subject to a criminal investigation for willfully failing to file a return for that year. It is clear that the petitioner was aware of his obligation to file timely Federal income tax returns but he knowingly failed to satisfy that obligation. Cf. United States v. Pomponio, 429 U.S. 10 (1976). *103 Second, petitioner submitted a false and fraudulent Form W-4 to his employer, John Deere, on November 4, 1974, which he permitted to remain in effect throughout the years in issue. The submission of such a false document is evidence of fraud. See and compare Raley v. Commissioner, T.C. Memo. 1980-571, on appeal (3d Cir.); Cook v. Commissioner, T.C. Memo. 1980-415; and Forbush v. Commissioner, T.C. Memo. 1979-214. Petitioner was later convicted on a plea of guilty for supplying "a false and fraudulent statement to John Deere Harvester Works, on which he claimed twenty-nine (29) withholding exemptions." Petitioner was sentenced on April 25, 1978, and only then did he take action to correct the false Form W-4 which was still on file with Deere. Third, petitioner filed several "protest" returns or amended returns which he knew were incorrect and show his intent to avoid the payment of his tax liabilities. Cupp v. Commissioner, 65 T.C. 68, 78-80 (1975), affd. by unpublished order 559 F.2d 1207 (3d Cir. 1977). The submission of such "protestor" documents has been held to be sufficient to meet the "affirmative *104 act" requirement of section 7201 for criminal prosecution purposes. United States v. Afflerbach, 547 F.2d 522, 524 (10th Cir. 1976), cert. denied 429 U.S. 1098 (1977). Fourth, the petitioner refused and failed to cooperate with respondent's agents during the investigation, Lord v. Commissioner, 525 F.2d 741 (9th Cir. 1975), and he made false and inconsistent statements to the agents. Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958). Such conduct by petitioner leads us inexorably to the conclusion that he did everything in his power to obstruct and impede the special agent's investigation. At the trial petitioner attempted to exculpate himself from any responsibility for his own wrongdoing in connection with the reporting and payment of his tax liabilities by attributing most of the blame for his own conduct to a self-styled "trust specialist", i.e., Peter Taylor of Milwaukee, Wisconsin, together with his purported belief that the entire Federal monetary and tax systems are unconstitutional. Apparently, he believes he was duped by Mr. Taylor and then left on his own to deal with the consequences of his actions *105 with the Internal Revenue Service. However, on this record we conclude that petitioner's purported defenses are groundless. This petitioner is no different from the numerous other "tax protestors" who have frequently appeared before this Court and other Federal courts challenging the constitutionality of Federal tax laws. He can hardly be described as a poor, uneducated individual led astray by more culpable parties. Rather, the evidence here convincingly establishes that petitioner affirmatively sought out any individual and any means which would permit him to hinder or impede the collection of taxes, that he ignored repeated warnings that his conduct was in violation of his legal obligations, and that he eventually admitted his recognition of the illegality of his actions through a plea of guilty to a criminal offense. The multiplicity and internal inconsistency of his schemes to avoid the payment of his correct tax liabilities belie any contention on his part that he acted in good faith or that he relied upon the advice of any individual in his dealings with respondent. Any claim of ignorance by petitioner concerning the propriety and consequences of his own actions is *106 obviously feigned and misleading. When it suited his own purposes, he demonstrated surprising knowledge for a layman concerning state and Federal tax laws. He was quick to complain when he believed that the special agent was violating his right to notification under the third-party recordkeeper summons procedures enacted as a part of the Tax Reform Act of 1976. He cited several cases and criminal provisions of the Internal Revenue Code as support for his failure to report "paper money" as income on his protest returns. He was able to quote specific provisions from the Internal Revenue Manual when the agent refused to permit him to tape record his initial interview. When faced with criminal prosecution and possible imprisonment for his false Form W-4, he was willing to "cop a plea" to the recommended criminal charge in return for which he received only probation. All in all, petitioner's actions in dealing with the Internal Revenue Service effectively negate any claim that he was acting in good faith in his protest activities. Surely, if he believed in what he was doing he would have been willing to discuss this with respondent's agents. Compare Muste v. Commissioner, 35 T.C. 913 (1961), *107 with Gajewski v. Commissioner, 67 T.C. 181 (1976), affd. by unpublished order 578 F.2d 1383 (8th Cir. 1978). Instead, petitioner embarked upon a course of conduct involving first feigned cooperation with the investigation, and then unconcealed threats against the investigating agents. The facts presented herein are indistinguishable from the numerous cases, both civil and criminal, involving "tax protestors" and their alleged "good faith" belief in their actions. This Court and other Federal courts have been able to see clearly through such claims of purported good faith belief by protestors in their actions and find an intentional violation of known obligations by them. See United States v. Moore, 627 F.2d 830-833 (7th Cir. 1980). The instant case is no different. Here the evidence clearly establishes the petitioner's voluntary, intentional violation of his known legal duties, namely, the filing of his Federal income tax returns, the reporting of his income and tax, the paying of his income tax and the submission of proper withholding statements. Accordingly, after examining and evaluating the facts contained in this record, we *108 have found and hold that part of the underpayments of tax for each of the years at issue was due to the petitioner's fraud.We therefore sustain the additions to tax under section 6653(b). Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated.↩